## BENJAMIN F. HOLDEN *v.* JOSEPH N. TANNER.

Where one signs an instrument between other parties, in which it is stipulated surety is to be given, and the instrument is signed in the presence of persons who are styled witnesses, he will be considered as having signed as surety, not as a witness, although his name may not appear in the body of the instrument.

Where a party signs, as surety, a lease, in which the lessee stipulates to take possession of the property at a certain time and to return it at the end of the lease in good order, and to execute his notes for the rent, the surety will be liable for the rent.

Where the lessee abandons the premises, the lessor may rent the property to other tenants, and does not thereby cancel the lease, or impair his recourse upon the lessee. He *is*, however, equitably bound to credit the lessee for the amount he receives from the new tenants.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. C. *Belcher*, for plaintiff. *J. C.* and *A. Beatty* and *R. D. Jourdan*, for defendant. The judgment of the court was pronounced by

SLIDELL, J. *Tanner* is sued as the security of *Jordan*, in a contract of lease of the following tenor: " Article of agreement entered into and concluded this day, between *B. F. Holden* of the first part, and *W. R. Jordan* of the second, &c., witnesseth, that the said *B. F. Holden* agrees to let or rent to the said *W. R. Jordan* the lower or basement part of the building now in contemplation of erection on the corner of Front and St. Louis streets, consisting of two rooms, with a separate or small room on the south end of each for a counting room, the corner or main room to be ceiled on each side, and to be finished with counter, shelves and drawers, suitable for a dry goods store, and to be made ready for use or occupany by or before the first of August ensuing ; extraordinary circumstances, such as accidents by fire, stress of weather, unforseen disappointments in my lumber, &c., only excepted : the said *Jordan* being bound to receive said premises as soon as ready for use, and to pay to *B. F. Holden*, or his assigns, from that date, at the rate of one thousand dollars per

<div align="right">HOLDEN<br>
<i>v.</i><br>
TANNER.</div>

year, payable quarterly, or say two hundred and fifty dollars at the end of each quarter or every three months from the time it is ready for occupancy, and for which he binds himself and his security in the sum of one thousand dollars as a penalty or a forfeiture in case of failure on his, *Jordan's*, part, to comply with the above requisitions; and also to return said property in the condition as received, natural wear and tear only excepted. He, *Jordan*, further agrees, that in case *B. F. Holden* builds a cellar under the west room, that *Holden* shall retain the exclusive privilege of and right of ingress and egress to and from the same, as said *Holden* may wish. In witness whereof, we have hereunto affixed our respective signatures, this eighth day of April, in the year of our Lord one thousand eight hundred and forty-six. (Signed,) W. R. JORDAN. J. N. TANNER. B. F. HOLDEN. In presence of G. W. HUNTER. H. S. KARR."

It has been argued on the part of the defendant, that there is nothing in the written agreement ascertaining the capacity in which he signed. But this objection seems to us of no avail. It is true, the name of the surety is not mentioned in the body of the instrument, but it contemplates the giving of a surety ; those who sign as witnesses are described as such ; the two other parties who sign are principals, and it is plain-that the third subscriber, *Tanner*, must have understood himself as signing as the contemplated surety.

It appears from the evidence that *Jordan* took possession as lessee in August, 1847, and continued to occupy until some time after the commencement of the third quarter, when he sold out his stock of goods and abandoned the premises without lawful cause. Sometime in the last quarter the lessor let out a portion of the premises to new tenants, and has given credit for the amount thus received. It does not appear that he rejected, or could have obtained any higher rent, or could have made a disposition of them more advantageous to the defaulting lessee. It is for the balance thus due by *Jordan*, under the lease, that the action is brought against the surety.

The district judge was of the opinion, and so the defendant has argued here, that *Tanner* did not bind himself as surety for the payment of the rent, but only for the performance of the stipulations to take possession on the first of August, and to return the property at the end of the term in as good order as received. This defence seems to us quite untenable. The expression " to comply with the above requisition," obviously comprehends the payment of rents, which was one of the antecedent stipulations on the part of the lessee.

It is said that the landlord lost his recourse against the surety by renting a portion of the premises to new tenants, after *Jordan* abandoned them. The contract between *Jordan* and *Holden* was a contract of lease; and *Tanner*, the surety, must be considered as having contemplated and submitted himself to the effect of the legal obligations which attach to such a contract. It is well settled, as part of the law of landlord and tenant, under our jurisprudence, that the lessee, who, without lawful cause, abandons the premises before the expiration of the lease, is at once bound for the rent of the whole term, and that the lessor does not destroy his recourse against the lessee by letting them to new tenants, being, however, equitably bound to make an allowance to the original lessee for what he may thus collect. See *Christy* v. *Casanave*, 2 N. S. 450 ; and *Reynolds* v. *Swain*, 13 L. R. 194. And in *Roumage* v. *Blatrier*, 11 R. R. 101, it was held, that where a lessee, for years, and his surety abandon the premises, the lessor, for the preservation of the property and the protection of his rights, may collect the rent due from the sub-tenants and procure new ones, for the benefit of the lessee or surety ; and where the lessor has never refused to place

<div style="margin-left:2em">HOLDEN<br>v.<br>TANNER.</div>

the premises under their control on their complying with the lease, such acts will not be considered as amounting to a cancelling of the lease, and the surety will be bound for the difference between the amount stipulated in the lease and that received from the sub-tenants. The principles recognized by those decisions are a sufficient answer to this branch of the defence. It is certainly with a bad grace that the surety complains that the lessor's diligence has lessened his burden. The lessor, if he thought proper, might have left the premises wholly unoccupied, and the lessee and then his surety would have been answerable for a larger sum.

There was an attempt to show that the plaintiff had granted a delay to the principal debtor, and so released the surety; but it is not sustained by the evidence. The amount of the testimony is, that *Jordan* made to *Holden*, through a mutual friend, overtures of settlement, by paying some cash and the balance in paper of third persons, such as *Holden* should consider unexceptionable. The amount of cash and the particulars of the paper were indeterminate. *Hoden* seems to have intimated, as was very natural, that such an arrangement, if consummated, would suit him; but never entered into any agreement which bound him to wait, or put it out of the power of the surety, if he had chosen to pay the debt, to enforce immediate payment from his principal.

It is therefore decreed, that the judgment of the district court be reversed; and that the plaintiff recover of the defendant the sum of $894 12, with interest from judicial demand, and costs of this suit in both courts.