(114 So. 846)

No. 28679.

RICCOBONO v. KEARNEY.

In re KEARNEY.

Oct. 31, 1927. Rehearing Denied Nov. 28, 1927.

(Syllabus by Editorial Staff.)

1. Landlord and tenant ⚖➡231(6)—Evidence held not to show that tenant, sued for rent, requested vendor to remove cash register included in lease.

In action for rent, evidence held not to show that defendant requested unpaid vendor to remove cash register included in lease.

2. Landlord and tenant ⚖➡133(2)—Lessor was obligated to protect lessee in enjoyment of cash register, included in lease, as against unpaid vendor.

Lessor, turning over cash register to lessee as part of leased premises, was under legal obligation to protect lessee in enjoyment thereof as against unpaid vendor.

3. Landlord and tenant ⚖➡186(1)—Lessee, paying lessor amount of month's rent for cash register removed by unpaid vendor, held justified in refusing to pay second month's rent in advance.

Lessee, paying equivalent of month's rent to lessor for cash register included in lease, held justified in refusing to pay rent in advance for following month after unpaid vendor refused lessee's offer to pay installment due, and removed register.

4. Landlord and tenant ⚖➡186(1)—Suit for year's rent and seizure of personalty, after refusal to pay month's rent in advance because of unpaid vendor's removal of cash register, held not justified.

Suit for rent for entire term of one year and seizure of tenant's stock and equipment in leased premises, after refusal to pay second month's rent in advance because of unpaid vendor's removal of cash register, for which tenant had paid plaintiff amount equal to month's rent, held not justified in law or fact.

5. Landlord and tenant ⚖➡195(2), 265(2)—Tenant, protesting suit for rent and seizure of personalty, held not to have abandoned lease so as to authorize sale of effects and lease to others.

Tenant in court, protesting against suit for rent and seizure of his stock and equipment, and asserting his right to retain possession under lease, held not to have abandoned it, so as to authorize lessor to sell effects seized and rent property to other tenants.

6. Landlord and tenant ⚖➡195(2)—Lessor may procure new tenants on lessee's voluntary abandonment of premises.

Where lessee voluntarily abandons premises, lessor is not compelled to let property remain vacant or idle, but may procure new tenants for original lessee's benefit.

Action by Domenico Riccobono against J. J. Kearney. A judgment of the district court for defendant was reversed, and judgment rendered for plaintiff by the Court of

Appeal, and defendant applies for writs of review and certiorari. Judgment of the Court of Appeal annulled and reversed, and that of the district court reinstated and affirmed.

Arthur B. Leopold, of New Orleans, for applicant.

Theodore Cotonio, of New Orleans, for respondent.

THOMPSON, J. The plaintiff leased to the defendant the premises known as 3865 Gentilly boulevard, this city, for twelve months, beginning May 1, 1923, and ending April 30, 1924. The price of the lease was $175 per month, payable on the first day of each month in advance. The lease contract stipulated that, on the failure to pay any installment of rent at maturity, the whole of the unexpired portion of the lease price should become due and collectible.

The defendant paid the first month's rent, that of May, in advance, but failed to pay the installment for the month of June which was due on the first of that month.

Thereupon the plaintiff, on June 12th, filed suit for the entire eleven months' rent, and caused all of defendant's property contained in the leased premises, including the plaintiff's own property, to be provisionally seized, all of which was thereafter sold by the sheriff on application of the plaintiff.

The record fails to show what amount, if any, was realized from said sale.

The defendant moved to dissolve the provisional seizure on various grounds unnecessary to state here.

The motion was overruled, and the defendant then answered, denying that he was indebted to the plaintiff in any sum whatever.

It was alleged that the contract of lease was made through fraud and misrepresentation on the part of the plaintiff.

That certain articles of furniture, including a cash register, were included in the lease on which the defendant paid the plaintiff $526 to cover installments, which the plaintiff claimed to have paid out on the purchase price of said articles.

That it developed that the plaintiff was not the owner of the cash register, and the same was removed from the leased premises by the cash register people.

It was further alleged that, shortly after the seizure by the sheriff, the plaintiff caused to be removed all the stock of soft drinks and all of the equipment contained in the leased premises, which operated as a cancellation of the lease.

On a trial in the district court, the plaintiff's demand was rejected, but on appeal the Court of Appeal reversed the judgment, and gave judgment in favor of the plaintiff for the full amount claimed, with interest and attorney fees, less a credit for rents received by plaintiff from tenants to whom the property had been leased after the defendant was ousted from the lease premises by the seizure.

It appears that the premises had been used by the plaintiff as a restaurant and soft drink stand, and, when he leased to the defendant for the same purpose, he included all the furniture and equipment then contained in the premises as per an inventory said to be attached to the lease. There was also included an electric sign, cash register, ice box, and a piano, which the plaintiff claimed to have purchased on installment, and on which he had paid as follows: On the sign, $150; cash register, $175; ice box, $96; and piano, $105.

The defendant paid the plaintiff these several amounts, together with the rent for the month of May.

It was understood that the defendant was to pay the balance due on said four articles as the installments became due.

It was further understood that at the termination of the lease, the several named articles were to be returned to the plaintiff, and

he was to pay the defendant one-half of the amount received from him.

The plaintiff did not know at the time how much of the purchase price of the several articles was unpaid, and this was left open to be ascertained by the defendant and the plaintiff's brother from the various vendors. It does not appear from the record that the defendant ever ascertained the exact amount unpaid on the several articles, nor the true amount which the plaintiff had paid thereon.

The defendant offered to make the payment on the cash register, but the people who sold the register declined to accept the payment from him, claiming they had not sold the register to Riccobono, and had no account against him. It appears that the register had been sold to a clerk employed by the plaintiff, and the account was in his name.

The company made repeated demands for payment, but the plaintiff made no attempt to adjust the matter or to settle the question of the title to the cash register, whereupon the cash register people caused it to be removed from the premises.

[1] There is some contention that the defendant requested the unpaid vendor to remove the cash register, but this contention is not sustained. Mr. McLane, the general representative of the Cash Register Company, testified that the defendant called on him for the purpose of taking up the notes due on the cash register, but he refused to accept payment from him because the register had not been sold to Riccobono, and they had no account against him.

This witness also testified that some one requested them to send and get the register, that they wouldn't pay for it, and he thought that this was Kearney. Later he said that, to tell the truth, he did not know who requested that the register be sent for. He did not know whether it was Riccobono or Kearney or Gloria to whom the register had been sold.

The defendant testified that the Cash Register Company sent and got the register on May 29th; that he did not know who requested the company to take it back; but that he was positive he did not do so. He also testified that he called on the company and offered to pay the installments due.

The plaintiff testified that he did not know about the Cash Register Company taking the register away, but he admits that he never attempted in any manner to settle the matter with the company or to protect his lessee in the possession of the register.

The Court of Appeal was of the opinion that the defendant had assumed the payments of the installments on the register, and that it was his failure to pay which brought about the removal of the cash register.

That court also held that taking possession of the leased premises after defendant had abandoned them and leasing to a third party without defendant's consent was not such an acceptance by the owner of the premises as would release the lessee from his obligation to pay the rent for the entire term.

[2] Our learned brothers ignored the fact that the plaintiff had turned this cash register over to the defendant as a part of the lease premises, and was under the legal obligation to protect the lessee in the enjoyment thereof. The lessor had received from his lessee the sum of $175 on the register, equivalent to one month's rent. When the defendant offered to pay the company the installment on the register, that company declined to accept it, and then for the first time the defendant was made aware that he had paid his lessor for a register which he did not own.

The plaintiff was informed of these facts, and took no steps to protect his lessee; on the

contrary, permitted the register to be removed, and twelve days after the payment for June was due, according to the lease contract, sued the defendant for the rent for the entire term, and closed the place of business by seizing, not only the stock of soft drinks belonging to the defendant, but also the equipment in the lease premises, rendering it impossible for the defendant to carry on the business for which he had leased premises and equipment.

It must be remembered that the defendant did all he was required to do. He offered to pay the installment on the cash register, but the creditor would not accept from him. The lessor and his former clerk in whose name the register was bought were the only parties who could adjust the matter, but they failed to do it, and the company took back the register, thereby depriving the lessee of the use of that which he had paid his lessor for.

It must also be remembered that, when the lessee was dispossessed of the cash register, it left the lessor owing him $175, an amount equal to the June rent on which the suit was brought, and for the failure to pay which it is claimed matured all of the lease price.

To say, therefore, that the defendant was at fault to the extent of causing the cash register to be removed and the suit brought is to overlook entirely the evidence found in the record.

[3] The defendant was fully justified in refusing to pay the rent for June in advance, for the reason that his lessor had in his hands $175 belonging to the defendant, and for which he had received no consideration.

[4] The suit and seizure, therefore, was not justified in law or in fact.

It had the effect of closing up and putting an end to the use of the leased premises and the equipment for the purposes for which they had been leased.

[5] In these circumstances, it will not do to say the defendant abandoned the lease. After the seizure, the plaintiff caused the effects seized to be sold, and proceeded to rent the property to other tenants, while at the same time the defendant was in court and protesting against the suit for rent, the seizure of the property, and asserting his right to retain possession under his contract of lease.

[6] Of course, no one disputes the proposition that, where a lessee voluntarily abandons the premises, the lessor may procure new tenants for the former's benefit.

The lessor is not compelled, under such circumstances, to let his property remain vacant or idle. But we have no case of abandonment by the lessee here, but a clear case of forced ouster on the part of the lessor through an improper and unjustified resort to the machinery of the courts.

The judgment of the Court of Appeal is annulled and reversed, and that of the district court is reinstated and affirmed, at the cost of the plaintiff in all courts.