No. 3521

Second Circuit

HICKMAN v. DAHLEN

(May· 8, 1929. Opinion and Decree.)

Thompson & Berry, of Winnsboro, attorneys for plaintiff, appellant.

E. B. Moore, of Winnsboro, attorney for defendant, appellee.

REYNOLDS, J. On October 10, 1928, plaintiff, S. N. Hickman, sued the defendant, B. H. Dahlen, to obtain judgment for $16,500, with interest thereon at the rate of 8 per cent per annum from October 1, 1928, until paid, and 10 per cent on the amount of principal and interest, as attorney's fees, as rent of certain immovable property situated in the town of Winnsboro, La., and of certain movable property situated therein, for the period beginning October 1, 1928, and ending September 30, 1933, and for judgment canceling the lease and restoring possession of the leased premises to him.

He alleged that the rent was past due and unpaid and that he had a lessor's privilege on all property found on the leased premises, other than that leased by him to the defendant, to secure the payment of the rent, and that he had good reason to believe, and did believe, that unless the property on which his privilege rested was provisionally seized the lessee would remove it from the leased premises and thereby deprive him of his privilege thereon, and he prayed that a writ of provisional seizure issue.

Attached to the petition as a part thereof is a contract of lease by authentic act from plaintiff to defendant of certain immovable property situated in the town of Winnsboro, La., known and described as "Hotel Franklin," and of certain movable property, consisting of hotel furnishings. The lease is for a term of five years, beginning October 1, 1928, and the price is $275 a month, payable monthly, in advance.

It is stipulated in the lease contract, among other things, that:

"It is distinctly understood and agreed that said rent shall bear 8% per annum interest after maturity and 10% upon the sum of principal and interest as attorney's fees in the event that it should be necessary to institute legal proceedings hereunder, or place this contract in the hands of an attorney at law for any action hereunder. It is expressly agreed and understood that the failure to promptly pay any one of said rent installments at its maturity, that is to say, on or before the first of each month and in advance as hereinabove stipulated, shall, at the option of the lessor herein, mature all the rent due hereunder and the entire obligation herein stipulated shall immediately become due and exigible at the option of the lessor."

A writ of provisional seizure issued and under it there was seized various articles of movable property situated upon the leased premises.

The defendant answered, admitting the execution of the lease contract and that the $275 rent for the month of October, 1928, had not been paid, but denied that he was seeking to remove or intended to remove from the premises any of the effects on which plaintiff's lessor's privilege bore, and he alleged:

"Further· answering, your respondent shows that the said plaintiff, upon the filing and service of this suit, expressly demanded the dissolution of the lease herein sued on, and prayed to be given the possession thereof, which said demand was acquiesced in by your respondent, and the

premises were accordingly delivered to the possession of the said plaintiff, who has had the absolute possession, dominion and control of said leased premises since the service of the process in this suit upon your respondent.

"That the dissolution of the lease, in the manner as alleged in the foregoing paragraph, the plaintiff having taken charge and full possession of the leased premises, a hotel in this case, and having continued to operate the same in his own name and for his own account since the date of its delivery to him on October 10, 1928, releases your respondent from any obligation under the terms of the lease for the payment of the rent from the date of the dissolution, and that the plaintiff is entitled to recover of and against your respondent a judgment herein for the rent or right of occupancy from October 1, 1928, to October 10, 1928, and the lien and privilege on the property herein seized should be recognized for no further amount."

Defendant's answer was filed on November 5, 1928.

Various creditors of the defendant filed interventions in the suit, claiming to own or to have a privilege superior to that of the plaintiff on certain of the articles provisionally seized, among them Remington Cash Register Company, of Ilion, New York, claiming to have a vendor's privilege on "one (1) Remington Cash Register No. B 312 x, 110, 359, walnut finish" to secure the payment of $144.38, with legal interest thereon from judicial demand, and 10 per cent on the amount of principal and interest, as attorney's fees, being balance of purchase price of the article in question, which indebtedness is represented by a promissory note for the sum of $157.50, dated September 20, 1928, drawn payable to the order of Remington Cash Register Company, Inc., of Ilion, N. Y., signed, "The New Franklin Hotel, by Ben Dahlen, Jr.," and payable in monthly installments of $13.12 each, except the last installment, which is $13.18. It is stipulated in the note that failure to pay any monthly installment shall at the option of the holder cause all unmatured installments immediately to become due. In an accompanying contract for the purchase of the article it is stipulated that:

"Should the services of any attorney become necessary in order to collect all or any part of the amount due under the terms of this contract, the lessee agrees to pay attorney's fees of ten per cent. of the amount involved."

The intervener prayed for judgment against the defendant for the amount of its debt, interest and attorney's fees; that its vendor's privilege on the article be recognized; that the article be recognized; that the article be appraised and sold separately from the rest of the property seized; and that its claim be paid out of the proceeds of the sale of the article in preference to plaintiff's claim.

Answering the petition of intervention, defendant admitted the purchase of the article and the existence of the indebtedness claimed by intervener, but denied that the sale was made in the state of Louisiana, and alleged that it was made in the state of New York, and alleged that for that reason the intervener had no privilege on the article for the balance of purchase price owing by defendant to intervener therefor.

On these issues the case was tried, both as between plaintiff and defendant and as between intervener and defendant, and there was judgment in favor of the plaintiff, S. N. Hickman, and against the defendant, B. H. Dahlen, decreeing the lease to be dissolved as of the date of the filing by defendant of his answer, to-wit, November 5, 1928, and for the sum of $320.80, as rent of the leased premises from October

1, 1928, to November 5, 1928, with interest thereon at the rate of 8 per cent per annum from October 1, 1928, until paid, and for 10 per cent on the amount of principal and interest, as attorney's fees, and all costs of suit, and recognizing a lessor's privilege in favor of plaintiff on all property seized, to secure the payment of the judgment, and ordering the property sold according to law for its satisfaction.

And there was judgment in favor of the intervener, Remington Cash Register Company, Inc., of Ilion, N. Y., and against defendant, B. H. Dahlen, for $144.38, with legal interest thereon from judicial demand and 10 per cent on the amount of principal and interest, as attorney's fees, and recognizing a vendor's privilege in its favor, subordinate, however, to plaintiff's lessor's privilege, on the cash register described in its petition, to secure the payment of the judgment, and ordering the cash register sold separately from the other property seized, and that intervener's judgment be paid out of the proceeds of the sale in preference to all creditors of defendant, other than plaintiff, in the event the sale of the seized property should yield more than enough to pay the judgment in favor of plaintiff.

From this judgment the plaintiff appealed, and the defendant, B. H. Dahlen, has answered the appeal and asks that the judgment be amended by decreeing that the lease was dissolved on October 10, 1928, instead of on November 5, 1928, and by reducing from $320.80 to $91.33 the amount of money he is adjudged to owe plaintiff for rent, and by taxing plaintiff with all costs of suit incurred subsequent to October 10, 1928.

## OPINION

It is conceded by both plaintiff, S. N. Hickman, and defendant, B. H. Dahlen, that the only issue between them is whether the lease contract was dissolved on the date of the commencement of the suit, October 10, 1928, or on the date of the filing of defendant's answer, November 5, 1928.

The lower court decreed the lease to be dissolved as of the date of filing of the answer and awarded plaintiff judgment for rents thereunder up to that date.

On the date the suit was filed the sheriff executed the writ of provisional seizure on all movables situated upon the leased premises and on the same day the defendant vacated and surrendered up possession of the premises and a Mr. Black was immediately put in possession of the premises, including the property therein provisionally seized, and thenceforth operated the hotel as a going concern. And it is contended by defendant that Black was the agent of plaintiff and that he should not be required to pay rent for the premises after the date plaintiff resumed possession of it. On the other hand, plaintiff contends that Black was not his agent but the representative of the sheriff.

The plaintiff, Hickman, testified:

"Q. On the 10th of October, the date of the filing of this suit, and the seizure of the property involved, had you arranged to have Mr. Black from Tallulah, here, to take charge of the hotel?

"A. Not for me personally, no, sir. I had arranged to rent before foreclosure, and to appoint Mr. Black as keeper.

"Q. Who communicated with Mr. Black and arranged the terms of his employment?

"A. I myself came to Mr. Price's office and asked Mr. Price to appoint Mr. Black to take charge of the hotel.

"Q. Upon what terms was Mr. Black engaged to operate the hotel?

"A. Well, he was supposed to take charge of the hotel, and the court to fix his salary or allow his salary.

"Q. Did you or not give Mr. Black any personal guaranty or assurance of what his compensation would be?

"A. I didn't guarantee anything. We agreed his salary would be $175.00 if the court would allow it. In other words, I didn't want my hotel closed up, and get the sheriff to appoint Mr. Black to take charge, and I have had nothing to do with it since.

"Q. At about what time of day or night was the levy under this writ of seizure made?

"A. About or around 6 o'clock.

"Q. Was Mr. Black present and ready to take charge?

"A. Yes, sir.

"Q. Did he immediately take charge, after serving the papers?

"A. Yes; he took charge that night.

"Q. Is it a fact that Mr. Black has had the exclusive control of the amounts and operation of the hotel since that time?

"A. Yes, sir.

"Q. Mr. Dahlen has not been back, or had anything to do with the management since he moved out?

"A. No, sir."

The Mr. Black referred to testified:

"Q. Mr. Black, have you been in charge and operation of the Franklin Hotel belonging to Mr. Hickman since October 10th?

"A. Yes, sir.

"Q. Mr. Dahlen has not had anything to do with the operation of that hotel since that date?

"A. No, sir.

"Q. You were present, and took charge at the time, the time of the seizure, and took charge immediately?

"A. Yes, sir.

"Q. There was and has been no interruption in the operation of the hotel?

"A. None.

"Q. The guests who were in the hotel at the time it was seized were not disturbed and continued to receive the accommodations of the hotel after the seizure?

"A. Yes, sir.

"Q. Who has received the emoluments or revenues from the operation of the hotel, since you took charge of it?

"A. What revenue has been has gone to maintain the hotel.

"Q. You have received them as they have been in and the guests have paid the expenses of the operation of the hotel?

"A. I have.

"Q. Have you received a salary for that service?

"A. I have.

"Q. Who has paid you the salary, Mr. Black?

"A. The hotel has paid it. I have charged it to the hotel.

"Q. Mr. Dahlen has not received any revenue from the hotel since the 10th of October, has he?

"A. No, sir."

A. L. Price, the sheriff, testified:

"Q. Did you not take into your possession the building. or right of occupancy, or merely the property found therein?

"A. Why, my understanding was just the property in the hotel was to be seized.

"Q. What was your understanding, Mr. Price, all parties concerned, as to how the matter of the operation of the hotel, after the seizure, should be carried on?

"A. I appointed a keeper and placed him in charge and told him to keep a strict accounting of everything that he used.

"Q. Of the property that you had under seizure?

"A. Yes, sir.

"Q. Who was the keeper, Mr. Price?

"A. Mr. T. F. Black.

"Q. What was the occasion of the appointment of Mr. Black, or reason for the appointment of Mr. Black?

"A. He was suggested as a practical hotel man, and a man that he relied on to take care of the property.

"Q. Who made that suggestion to you, Mr. Price?

"A. Mr. Hickman.

"Q. Is it not a fact that Mr. Hickman, prior to and at the time of the seizure, instructed you to put Mr. Black in operation of the hotel and requested that you appoint him keeper of the property that you had seized?

"A. Yes, sir; he asked me to appoint Mr. Black keeper.

"Q. Have you, since the 10th day of October, had anything to do with the operation or management of that hotel?

"A. No, sir."

It very clearly appears from this evidence that the defendant gave up his lease and surrendered to plaintiff possession of the leased premises on October 10, 1928, and that plaintiff, on that date, resumed possession of the hotel building.

It is well settled in the jurisprudence of Louisiana that a lessor cannot accept the surrender of the lease and resume possession of the leased premises and hold the lessee for the use of the premises thereafter. Sigur v. Lloyd, 1 La. Ann. 421; Fox v. McKee, 31 La. Ann. 67; Mahan v. Lafaye, 3 La. App. 445; Castagna v. Marshall, 3 La. App. 778.

The leased premises were not seized. Only the movables therein belonging to defendant were. The sheriff had no authority to operate the hotel and he testifies that he did not do so. It is shown by the evidence that plaintiff put Black in possession of the hotel premises and at his request the sheriff appointed Black custodian of the seized movables. This occurred on October 10, 1928. Therefore plaintiff was not entitled to receive rent of the premises from defendant subsequent to October 10th, and the trial court erred in allowing plaintiff rents after that date.

In respect of the judgment in favor of the Remington Cash Register Company, Inc., of Ilion, New York, the contention of plaintiff is that the contract between that company and the defendant was a New York contract and that, it not being a Louisiana contract, intervener had no vendor's privilege.

The sale of the cash register was made to defendant by the Monroe Store & Office Equipment Company and shipped to defendant from Monroe, La.

Mr. Mayo testified:

"Q. Mr. Mayo, are you an employee of the Monroe Store & Office Equipment Company?
"A. Yes, sir.
"Q. This Monroe Store & Office Equipment Company has an agency for the sale of goods for the Remington Cash Register Company, Inc.?
"A. Yes, sir.
"Q. They keep on hand at all times various numbers and kinds of goods for the Remington Cash Register Company, Inc.?
"A. Yes, sir.
"Q. The Monroe company has authority to complete sales—that is, they have authority to do more than take orders for sales?
"A. Yes, sir.
"Q. You are personally acquainted with the sale of a cash register sold to Mr. B. H. Dahlen through his son?
"A. Yes, sir; I handled the transaction myself."

He further testified that goods are shipped by the Remington Cash Register Company, Inc., to the Monroe Store & Office Equipment Company and that sales are made by them, subject to the approval of the credit man of the Remington Cash Register Company, Inc., whose office and residence is in New Orleans.

The contract between the Remington Cash Register Company, Inc., and defendant was, we think, a Louisiana contract, and the lower court correctly recognized a vendor's privilege in favor of that company on the cash register sold by it to defendant.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the amount of the money award in favor of plaintiff, S. N. Hickman, and against defendant, B. H. Dahlen, from $320.80 to $91.33, and that in all other respects the judgment appealed from be affirmed. Plaintiff to pay the cost of the appeal.