219 So.2d 307 (1969)
CLAY-DUTTON, INC., Plaintiff-Appellant,
v.
W. De Jarnette COLEMAN, American Mortgage Corporation and Stanley La Fargue, Defendants-Appellees.
No. 7541.
Court of Appeal of Louisiana, First Circuit.
January 27, 1969.
*309 Prentice L. G. Smith, Jr., of Conway & Smith, Baker, for appellant.
Lonnie A. Davis, Baton Rouge, for American Mortg. Corp.
R. Paul Greene, Baton Rouge, for Stanley A. La Fargue.
Before LANDRY, REID and SARTAIN, JJ.
SARTAIN, Judge.
Plaintiff-appellant, instituted this suit in the City Court for the City of Baton Rouge entitling his cause "CLAIM ON LEASE AND MAINTENANCE AGREEMENT", alleging that it had leased to a Mr. W. DeJarnette Coleman a 1965 Mercury Montclair Sedan. In accordance with the payment schedule attached the lease was for a period of forty-four months with the following monthly payment schedule: $113.53 for the first twenty-four months, $94.76 for the next twelve months, and $85.06 for the remaining eight months.
The lease is dated October 29, 1964. On July 27, 1966 the defendant (Coleman) abandoned the vehicle by voluntarily surrendering the same to petitioner.
Plaintiff instituted this action against Mr. Coleman, his employer, American Mortgage Corporation, as guarantor and in the alternative against Mr. Stanley La Fargue, President of American Mortgage Corporation. The basis of the claim against Mr. La Fargue is that as President of American Mortgage Corporation he exceeded his authority by guaranteeing this lease in the name of the corporation and on behalf of the defendant (Coleman) and in favor of the plaintiffs. Plaintiff seeks to recover the sum of $723.55, together with 8% interest from date of judicial demand until paid, and 25% attorney's fees and for all costs of these proceedings in accordance with the contract of lease.
There is no dispute about the facts in this case. While the testimony given during the course of the trial on the merits was not reported, the exhibits, schedules and interrogatories offered during the course of the trial clearly establish the factual basis upon which the trial judge based his decision. Also contained in the record are the trial judge's written reasons for judgment.
Plaintiff's petition alleges that at the time of the surrender of the vehicle by Coleman there remained owing under the lease the sum of $2,525.85, "that with the permission and authority of said defendant" the vehicle was sold at private sale for $1,800.00, thus leaving the sum of $723.55, the amount sued on. None of this sum represents past due installments.
The trial judge held that the termination provisions of the lease agreement which provided for a private sale of the leased vehicle by plaintiff and the right accorded plaintiff to seek any deficiency was contrary to LRS 13:4106 et seq. (Deficiency Judgment Act) and particularly LRS 13:4107 and bars plaintiff's recovery. Said statute reads as follows:
"R.S. 13:4106 declares a public policy and the provisions thereof can not, and shall not be waived by a debtor, but it shall only apply to mortgages, contracts, debts or other obligations made, or arising on or after August 1, 1934."
The language of LRS 13:4106 and 4107 is quite clear and does not limit the effects thereof nor the rights to a deficiency judgment to a mortgagee only for Section 4106 clearly applies to "a mortgagee or other creditor" and Section 4107 is quite definitive when it states that the provisions of Section 4106 shall apply to "mortgages, contracts, debts or other obligations * * *"
*310 Notwithstanding the fact that the trial judge decided this case on the grounds that the settlement provisions of the contract violated LRS 13:4106 et seq., a position with which we concur, we are also satisfied that the contract between the parties involved in this litigation is a lease and that the respective parties' rights and obligations thereunder can probably best be determined according to lease law. In considering the facts giving rise to this litigation we are reminded that our Civil Code clearly provides for the lease of movables as well as immovables and prescribes certain exceptions whereby the general provisions are not to be considered as controlling. CC Articles 2678, 2692-2695, Lyons v. Jahncke Service, Inc., 125 So.2d 619 (1st La.App., 1960).
The applicable provisions of the lease concerning the term, return of the vehicle (voluntary or otherwise) and cancellation privileges are as follows:
"TERMINATION & CANCELLATION PRIVILEGES:
5. Lessee may terminate the lease of any vehicle at any time after the Earliest Termination Date specified at A in the Termination Section of the Rental Schedule for such vehicle or, if the circumstances should indicate the necessity or desirability of such action, Lessee may cancel the lease of any vehicle at any time after three (3) months from the date of delivery of same and prior to the Earliest Termination Date: provided Lessee at such time shall (a) not be in default hereunder; (b) have given Lessor thirty (30) days advance notice in writing of such intent (c) have returned the motor vehicle to Lessor at the return place specified at 7 in the Rental Schedule therefore, (d) have paid to Lessor all of the rentals and any other charges accruing upon such vehicle up to the date of return of such vehicle and (e) pay to Lessor the additional rental charge as hereinafter provided, if any, at the time of such termination or cancellation. Upon receipt of the vehicle, Lessor will offer it for sale for cash or, in its discretion, offer to credit Lessee as if such vehicle had been sold for cash, subject to approval of the net amount of such selling price or credit by Lessee. Lessor will advise Lessee of the highest verbal or written net offer received and will, for a period not to exceed fourteen (14) days, sell, or credit Lessee, only for an amount approved by Lessee. If Lessee fails to approve any offer during such fourteen days period Lessor may at any time thereafter, in its discretion sell the vehicle for the highest net cash offer then available. Upon termination or cancellation by Lessee Lessor will credit or charge Lessee the difference between:
(i) The Net proceeds from the sale of such vehicle or from the involuntary conversion thereof in the instances hereinafter specified in paragraph 11 of this agreement or the agreed credit therefore; and
(ii) if Terminated, the amount specified at B in the Termination Section of the annexed Rental Schedule applicable to such vehicle less the sum of the Monthly Adjustment Factors specified at C in said Termination Section for the number of months the vehicle shall have been leased after the passing of the Earliest Termination Date specified at A in said Termination Section and up to the date of return of the vehicle to Lessor or to the date of receipt of the proceeds from involuntary conversion thereof.
(iii) if Cancelled, the amount specified at D in the Cancellation Section of the annexed Rental Schedule applicable in such motor vehicle plus the sum of the Monthly Cancellation Factor specified at E in said Cancellation Section for the number of months remaining from the date of return of such vehicle to Lessor or from the date of receipt of the proceeds from involuntary conversion thereof up to the *311 Earliest Termination Date specified at A in the Termination Section of such Rental Schedule.
If the amount of such proceeds of sale or involuntary conversion, or credit given by Lessor in lieu thereof specified as (i) above shall exceed the amount specified as (ii) above, if terminated, or as (iii) above, if cancelled, Lessor will pay the amount of such excess to Lessee, if Lessee is not in default hereunder, as either a Termination or Cancellation rental rebate, as the case may be, but if such proceeds shall be less, then Lessee shall pay such difference to Lessor as additional rental hereunder. Payment of such rental rebate shall be paid to Lessee within ten (10) days after receipt of such proceeds by Lessor and payment of such additional rental will be paid to Lessor by Lessee within ten (10) days after receipt of Lessor's billing therefor. This lease shall not be considered either Terminated or Cancelled unless and until the amount of the additional rental billed to Lessee has been paid to Lessor and all of Lessor's remedies hereunder shall continue until so paid. The various Monthly Adjustment Factors and the Cancellation Factor specified on the Rental Schedule shall be pro-rated in accordance with the number of elapsed days during the month in which the Termination or Cancellation shall become effective as specified herein."
* * * * * *
"DEFAULT:
18. Time is of the essence. If Lessee be in default under any of the Rental Schedules incorporating the provisions hereof, or if a proceeding in bankruptcy, insolvency, reorganization or receivership is instituted by or against Lessee or its property, or if any carrier of insurance required hereunder cancels any policy of insurance or determines that Lessee is an uninsurable risk at standard rates, then Lessor, at its election, may (a) declare immediately due and payable, and Lessee will pay the rent then unpaid for the balance of the Lease Term on any or all vehicles leased hereunder that Lessor or the assignee of any such vehicles so in default may request; or (b) take possession of any or all vehicles leased hereunder and (i) terminate all or any of the several leases and all the rights of Lessee to any or all vehicles leased thereunder; or (ii) sell any or all of such vehicles as provided in Paragraph 5 hereof, and collect from Lessee as additional rental, any deficiency in the proceeds of such sales; or (iii) without terminating this lease or the Lessee's obligation hereunder, lease any or all thereof for the account of Lessee, applying such rentals to Lessee's rentals due hereunder, holding Lessee responsible for any deficiency therein. Lessee waives all claims for damages because of entry or taking possession upon default by Lessee. No remedy is exclusive of another. If Lessor be in default as to any vehicle, Lessee may not terminate the lease of any other vehicle except as provided in Paragraph 5 hereof. If suit be instituted to enforce this agreement, the party failing to prevail will pay the other such sum as the Court may award as attorney's fees. In the event it becomes necessary for Lessor to sue Lessee for non-payment of rent or for additional rent upon termination, lessee consents that such suit may be commenced and maintained in any Court having jurisdiction over the subject matter, and service had by sending, by registered or certified mail the summons and complaint together with an affidavit of service addressed to Lessee at the address specified herein." (Emphasis ours)
Once a contract of lease has been entered into the same continues in effect until the expiration of the term provided or the termination thereof by operation of law, voluntary or involuntary. If the lease be terminated at the instance of the lessor on grounds occasioned by the lessee our courts have consistently and uniformly held *312 that the lessor has the right to (1) sue for past due rentals and termination of the lease, in which case he would be returned to possession of the leased item and would forfeit future rentals, or (2) sue for past due rentals and all future (accelerated) rentals in which case, he would stand as a judgment creditor of the lessee but the lease would remain in effect as a right of occupancy of the lessee. Mahan v. Lafaye, 3 La.App. 445; Castagna v. Marshall, 3 La. App. 778; Loyacano v. Villere & Burglass, 6 La.App. 37; Henry Rose Mercantile & Mfg. Co. v. Stearns, 154 La. 946, 98 So. 429; Hickman v. Dahlen, 19 La.App. 723, 122 So. 85; Burglass v. Villere, La.App., 147 So. 727; Succession of Isreal, La.App., 154 So. 487; Maggio v. Price, La.App., 1 So.2d 404; Kinchen v. Arnold, La.App., 60 So.2d 114; and, Bill Garrett Leasing, Inc. v. General Lumber & Supply Co., La.App., 164 So.2d 364.
In the event there is abandonment by the lessee of the thing leased the lessor may still exercise the two options listed above and in addition may re-let the thing leased. In the event the lessor elects to re-let the thing leased the original lease agreement remains in effect and is not terminated until the expiration of the time originally agreed upon. Holden v. Tanner, 6 La.Ann. 74; Sliman v. Fish, 177 La. 38, 147 So. 493 (La.Sup.Ct., 1933); Riccobono v. Kearney, 164 La. 947, 114 So. 846 (La. Sup.Ct., 1927); Bernstein v. Bauman, 170 La. 378, 127 So. 874 (La.Sup.Ct., 1930). However, in the event the lessor sells the leased item after it was abandoned by the original lessee, the lessor cannot recover rental beyond the date of his subsequent sale. Weil v. Segura, 178 La. 421, 151 So. 639 (La.Sup.Ct., 1933).
The case of Bill Garrett Leasing, Inc. v. General Lumber & Supply Co., supra, clearly sets forth the law applicable to a situation where the lessor interrupts peaceful possession of the lessee of the thing leased. The latter cited cases, Holden v. Tanner, supra, through Weil v. Segura, supra, deal with situations where the lessee has either voluntarily surrendered or abandoned the leased item.
The Holden case, decided in 1851, stands for the proposition that where the lessee abandons the premises, the lessor may rent the property to another tenant and does not thereby cancel the lease nor impair the lessor's recourse against the lessee. "He is, however, equitably bound to credit the lessee for the amount he receives from the new tenants".
Sliman v. Fish, supra, is authority for the rule that abandonment by the lessee of the leased premises accelerates the entire amount of rent due under the lease.
In Riccobono v. Kearney, supra, the rule is again recognized that where a lessee voluntarily abandons the premises, the lessor may procure new tenants for the former's benefit.
In Bernstein v. Bauman, supra, where the premises were abandoned by the lessee without justification our Supreme Court held that the lessor was only entitled to recover accelerated rentals from the lessee in an amount equal to the difference between the original rental or $150 per month and the new rental of $105 per month or $45 per month.
Finally, in Weil v. Segura, supra, the court held that the lessor was entitled to a judgment against the lessee for only those months that lapsed between the date lessee abandoned the premises and the lessor sold the premises to another person. Thus it was determined that lessor was not entitled to recover any rent after the date he sold the property.
The provisions of the lease contract quoted extensively hereinabove make frequent reference to "additional rental". It is abundantly clear to us that under the very terms of this lease plaintiff is now endeavoring to collect "future rentals". Whether future rentals are declared "additional rental" or the sums sought are computed under any other formula said *313 sums still remain future rentals and cannot be collected after the termination of the original contract unless there is first obtained a judgment in favor of the lessor accelerating the rentals due under the contract and the lessor then seizes the lessee's rights under the lease. This procedure of necessity requires a judicial process and is a condition precedent to obtaining a deficiency judgment.
This in our opinion is the logical interpretation of those provisions of LRS 13:-4106-4107 which specifically refers to "contracts, debts or other obligations".
A perusal of the lease agreement offers ample proof that paragraphs 5 and 18 have for their express purpose the elimination of a judicial process which requires sale with appraisement as a requisite to a claim for any deficiency.
Plaintiff has urged the application of the rule that parties may make their own contracts, and as such, said contracts form the law between the parties and should be enforced as long as they do not contravene good morals and public policy. To this our answer must be that the instant contract does in fact contravene the hereinabove quoted authorities and the well established rule that a lessor may not collect future rentals in the cases where said lessor has evicted his lessee and thereby caused a termination of the lease.
We have considered the case of Mossy Enterprises, Inc. v. Piggy-Bak Cartage Corporation, La.App., 177 So.2d 406 decided on June 15, 1965 by our colleagues of the 4th Circuit Court of Appeal where a "value termination adjustment" clause in a lease contract was considered as part of the consideration for the lease itself and settlement thereunder was permitted. The report does not indicate that the issue of eviction or seizure as a bar to future rentals was raised.
For the above and foregoing reasons the judgment appealed from is affirmed at appellant's costs.
Affirmed.