495 So.2d 1291 (1986)
Ervin J. RICHARD, et al.
v.
Floyd J. BROUSSARD, et al.
No. 86-C-0604.
Supreme Court of Louisiana.
October 20, 1986.
Rehearing Denied November 13, 1986.
*1292 Risley C. Triche, Triche, Sternfels & Nail, Napoleonville, for applicant.
Kim Stansbury, Morgan City, for respondent.
LEMMON, Justice.
The issue in this case is whether the lessors of immovable property, upon abandonment of the property by the lessees during the term of the lease, are entitled to occupy the premises for their own business purposes for the remainder of the term and also to collect from the lessees the contractual rent for the same period. We conclude that the lessors are not entitled to recover rent from the lessees after the date the lessors occupied the premises for their own business purposes.
Plaintiffs-lessors leased a building to defendants-lessees on November 20, 1981 for a period of twenty-four months at a monthly rental of $3,250 per month. Plaintiffs had previously operated a restaurant on the premises, but had retired from the restaurant business. Defendants leased the property for the purpose of operating a similar seafood restaurant business. The lessees paid the rent from November 20, 1981 until July, 1982, at which time the lessees abandoned the premises and informed the lessors that they were unable to operate the unsuccessful business any longer.
The lessors immediately began advertising for a new tenant. When they failed to secure a new rental contract, the lessors occupied a portion of the premises and began a seafood take-out business, with about two tables. They also proceeded to renovate the premises with the idea of making it more attractive for rental purposes. Eventually the lessors occupied the entire premises with their seafood business and continued to operate the business on the premises beyond the remainder of the term of the original lease.
In the meantime the lessors filed this action in December, 1982 to recover accelerated rents, costs and attorney's fees. The trial court rendered a judgment in favor of the lessors for $42,272.05 in accelerated rent, costs and expenses, together with attorney's fees in the amount of 25%. The court of appeal affirmed the judgment as to rent, costs and expenses, but reversed that portion of the judgment which awarded *1293 attorney's fees of 25% and remanded the case for the determination of a reasonable fee. 482 So.2d 729. We granted the lessees' application for certiorari. 488 So.2d 190.
Generally, when a lessee defaults on a lease agreement, the lessor has two options available: he may sue to cancel the lease and to recover accrued rentals due, or he may sue to enforce the lease and to recover both accrued rentals and future accelerated rentals (if the lease contains an acceleration clause). These remedies are mutually exclusive. Riccobono v. Kearney, 164 La. 947, 114 So. 846 (1927); Comment, The Louisiana Law of Lease, 39 Tul.L.Rev. 798, 860 (1965); V. Palmer, Leases, The Law in Louisiana § 5-19 (1982). If the lessor elects to cancel the lease, the lease is terminated and the lessor is entitled to return into possession, but he forfeits the right to all future rentals. On the other hand, if the lessor elects to enforce the lease, he may obtain a money judgment against the lessee based on the terms of the lease agreement, but the lease remains in effect and the lessee retains the right of occupancy for the remainder of the term of the lease. See Clay-Dutton, Inc. v. Coleman, 219 So.2d 307 (La.App. 1st Cir.1969). However, when the lessee breaches the lease by abandoning the premises, the lessor has the right to take possession of the premises as agent for the lessee and to relet the premises to a third party without canceling the lease or relieving the lessee of his obligations under the lease contract.[1]
In the present case, the lease contract incorporated all of these remedies. Paragraph XXIII(C) of the lease provided:

"If the demised premises shall be deserted or abandoned during the term of this lease or should the LESSEES begin to remove personal property or goods to the prejudice of the LESSORS liens, or if the LESSEES shall be evicted from said premises by a summary proceedings, or otherwise, or upon the happening of any event or default, LESSORS may, at its election re-enter the same by force or otherwise, without being liable for prosecution therefore, and may relet said premises at any time as agent of LESSEES, applying any monies collected first, to costs, fees and expenses of collection, second, to the expense of obtaining possession and redecoration and/or altering the premises, third, to the payment of the rent and all other sum owing and to become owing LESSORS, and paying any surplus thereof to the LESSEES, and such re-entry and reletting shall not discharge LESSEES from liability for rent nor from any other covenant of this lease by it or to be kept and performed." (emphasis supplied)
Accordingly, when the lessees abandoned the premises in this case, the lessors had the right to reenter the premises for the purpose of reletting the property to a third person, with the lessees receiving the benefit of any rent collected from the third person (after recovery by the lessors of costs, fees and expenses of collection, and the expense of redecorating or altering the premises) but remaining liable for their obligations under the lease. The purpose of this paragraph was to permit the lessors, faced with the undesirable situation of having empty rental premises because of the lessees' abandonment, to reduce their damages without incurring any liability and without releasing the lessees from their obligation to pay rent. The lessors, however, *1294 did more than simply reenter the premises for the purposes of reletting to a third party. The critical issue is the legal effect of their reentry after abandonment by the lessees and their proceeding to utilize the premises in the operation of a personal business.
The court of appeal noted that the lease contract did not expressly grant the lessors the right upon abandonment to reenter the premises and operate a business, but stated that no Louisiana case has addressed the issue whether such action constituted a termination of the lease. The court concluded that the lessors never intended to cancel the lease and discharge the lessees, but intended only to reduce the damages for the benefit of all parties. The court emphasized that the lessors made every effort to relet the premises, although under no obligation to do so, before finally reestablishing a business on the premises in a good faith effort to mitigate their damages after the lessees had failed to fulfill their contractual obligations. In the court's view, these actions constituted a mere reentry "for the purpose of preserving the property and enhancing its leasing value" which did not impair the lessors' rights against the lessees under the lease contract.[2] We disagree.
When the lessors sued to recover the accelerated rent, the lessees retained the right to occupy the premises. However, the lessors thereafter usurped this right from the lessees by occupying the premises themselves to the exclusion of the lessees.[3] Although the lessors may have mentally reserved the intention not to dispossess the lessees, their physical actions effected this result.[4] A lessor simply cannot physically dispossess the lessee by extrajudicial action and then recover a money judgment for the future rentals which would have accrued if the lessee had continued to enjoy the right of occupancy.[5] *1295 Moreover, the lessors' argument that they were forced into taking possession when the lessees left them "holding the bag" ignores the reality that every lessor finds himself involuntarily in this situation when the lease is breached.
Accordingly, the lessors are not entitled to recover from the lessees the rent which otherwise would have been due during the period that the lessors occupied the premises by operating their own business. The lessors' election to occupy the premises for their own business use effectively terminated the lease, regardless of the lessors' good faith motivation or their intent that the lease should continue in effect.[6]
The remaining issue involves the determination of the amount due to the lessors between the abandonment and the time they reoccupied the premises. The record established that the lessors reoccupied the premises in early October of 1982 and began gradually to reestablish their business. This business operation on the premises continued until after November, 1983, the termination date of the lease. The lessors are not entitled to collect rent after October, 1982, but are entitled to recover the rent due for the period between July, 1982, the date the lessees discontinued rental payments, and the end of September, 1982, the date the lessors reoccupied the premises and began using the property for operation of a personal business.[7]
For these reasons, the judgment of the court of appeal is amended to decrease the amount of the rent recovery to $6,500. As amended, the judgment is affirmed. Costs in all courts are assessed to the lessees.
NOTES
[1] A lessor generally must resort to the judicial process to take possession of the leased premises upon the lessee's default and may not engage in self-help. The courts have carved out an exception to this general rule which allows a lessor to engage in self-help when the lessee has unjustifiably abandoned the leased premises. See Bunel of New Orleans, Inc. v. Cigali, 348 So.2d 993 (La.App. 4th Cir.1977). This jurisprudental "law of abandonment" developed outside of La.C.C. Art. 2729, which provides:

"The neglect of the lessor or lessee to fulfill his engagements, may also give cause for a dissolution of the lease, in the manner expressed concerning contracts in general, except that the judge can not order any delay of the dissolution."
Abandonment requires "a showing of the act of voluntary relinquishment with the intention to terminate without vesting ownership in another". Preen v. LeRuth, 430 So.2d 825 (La.App. 5th Cir.1983).
[2] The court of appeal referred by analogy to cases dealing with the types of activities a lessor may engage in without evidencing an intent to cancel. For example, in Shaw v. Knight, 16 La.App. 474, 134 So. 286 (2nd Cir.1931), the lessor hired a caretaker to watch over the property, and the court held that the lessor had the right to take possession of the abandoned leased premises for the purpose of protection and conservation. The lessor's actions in Shaw, of course, are clearly distinguishable for the lessors' actions in the present case. Although hiring a caretaker is an act of preservation and conservation, operating a business on the property goes far beyond either preservation or conservation.
[3] The lessors contend that the premises were available for the lessees during the entire term in the sense that the lessees could have reoccupied but declined to do so. Of course, the lessors would have been even more delighted if the lessees had never abandoned the premises and made all rent payments timely. In point of fact, however, the lessors after the abandonment elected to exercise the right of occupancy, a right which the lessors could only acquire by terminating the lease (or by enforcing the lease and obtaining a judgment against the lessees and then seizing the lessees' right of possession as an asset in the execution of the judgment, as pointed out in note 5).
[4] The lessors' actions in this case were more analogous to a sale. In Weil v. Segura, 178 La. 421, 151 So. 639 (1933), this court held that the sale by the lessor of the abandoned premises to a third party terminated the lessee's right of occupancy and that the lessor therefore forfeited all future rents accruing after the date of the sale. In arriving at this conclusion, this court reasoned as follows:

"When plaintiff resumed possession of the leased premises after they had been abandoned by defendant, he was acting for his tenant, and his possession was that of his tenant, and he was required to account to his tenant for any rent he received from the property. But, when plaintiff sold the property... he conveyed to the vendee full dominion, including the exclusive right of possession, of the property which he owned. Plaintiff's possession for account of his tenant was converted necessarily into possession for his own account for the purpose of making the sale. Thereafter it is clear that defendant could not reoccupy the premises, nor could defendant, nor plaintiff for defendant's account, sublease to another or sell the right of occupancy from the proceeds of which defendant might extinguish or diminish his obligation to plaintiff." Id. 151 So. at 641.
[5] A lessor in this situation is generally not without a remedy. Upon default, a lessor may obtain a judgment against the lessee for the accelerated rent due for the remainder of the period and then execute on that money judgment by seizing the lessee's right of occupancy under the lease as an asset belonging to the lessee. See Comment, The Louisiana Law of Lease, 39 Tul. L.Rev. 798, 860, n. 520 (1965). Of course, that remedy may not have been practical in the present case because of the short period remaining under the lease, unless the lessees had failed to contest the action to recover the future rentals.
[6] Of course, the lessors and lessees could have agreed that the lessors would occupy the premises after the abandonment and operate the business, with the lessees remaining liable under the lease but receiving some benefits for their consenting to forego their right of occupancy.
[7] In D.H. Overmeyer Co., Inc. v. Blakeley Floor Cover, Inc., 266 So.2d 925 (La.App. 4th Cir. 1972), the lessor relet the leased premises at a higher rental six weeks after an abandonment. The lessee asserted that the additional increment of rent should be credited retroactively. The court disagreed and held the lessee liable for the rent during the six weeks the premises were vacant, reasoning that the property was available to the lessee for use during this time.