499 So.2d 325 (1986)
Bernell SIMS, et al.
v.
Bennie SELVAGE, et al.
No. 85 CA 1168.
Court of Appeal of Louisiana, First Circuit.
November 12, 1986.
Rehearing Denied January 12, 1987.
*326 Daniel Becnel, Reserve, for plaintiff-appellant Bernell Sims, et ux.
L.D. Sledge, Baton Rouge, for intervenor-appellee L.D. Sledge.
James Moore, and Caroline Norton, Baton Rouge, for defendant-appellee City of Baton Rouge and Bennie Selvage.
Daniel Avant, Baton Rouge, for intervenor-appellee Associated Associations Health Benefit Group Trust.
Before SAVOIE, CRAIN and JOHN S. COVINGTON, JJ.
CRAIN, Judge.
Bernell Sims suffered personal injuries as a result of taking evasive action while trying to avoid a collision between the motorcycle he was driving and a truck which had darted across the roadway into his path. The truck, owned by the City-Parish of East Baton Rouge, was driven by City-Parish employee, Selvage, during the course and scope of his employment. The accident occurred on December 27, 1983. On February 8, 1984, Sims retained the services of attorney L. D. Sledge, to represent him in a claim for damages. Sledge was employed by Sims under a contingent fee contract. This suit was filed by Sledge on behalf of Sims on March 20, 1984. Sims subsequently dismissed Sledge and retained Becnel under a contingent fee contract dated May 12, 1984. Becnel was substituted as counsel of record and prosecuted this case to the present. Sledge intervened in the proceedings seeking an apportionment of the contingent fee.
After trial on the merits of the personal injury action, judgment was rendered in favor of Sims against Selvage and the City-Parish of East Baton Rouge. Sims was awarded $234,203.09 with legal interest from date of judicial demand and court costs. From this judgment Sims appeals on the issue of quantum.
The intervention was tried separately. Judgment was rendered on June 28, 1985. The trial court found that Sledge was dismissed without cause. He was awarded:
[A] TWENTY-FIVE (25%) PERCENT share of the legal fee arising from the judgment now under appeal by said Bernel Sims said legal fee amounts to THIRTYFIVE (35%) PERCENT of the total judgment, inclusive of interest. Therefore, Mr. Sledge is entitled to TWENTYFIVE (25%) PERCENT OF THIRTYFIVE (35%) PERCENT of the final judgment amount, inclusive of interest to be rendered on behalf of Mr. Sims.
From this judgment Becnel appeals alleging that the trial court erred in determining that Sledge was dismissed without cause and in awarding Sledge 25% of the contingent fee.

QUANTUM
Plaintiff alleges that the trial court erred in failing to award special damages for lost wages and future medical expenses. Additionally, Sims alleges that the general damages award was insufficient. Plaintiff is a thirty-two year old high school graduate. He had been employed for eleven years at Gulf Wandes Plastics and was earning approximately $9.25 an hour as a plastics fabricator at the time of the accident. He had not worked from the time of the accident to the date of trial.
We note that where a trial court relies on the deposition testimony of a witness, the manifest error standard of review does not apply. Hayes v. Commercial Union *327 Assurance Co., Inc., 459 So.2d 1245 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1247 (La.1985). Consequently, we will evaluate the deposition testimony based on the sufficiency and preponderance of the evidence and apply the manifest error standard of review to live testimony offered at trial.
The trial court found that Sims suffered physical and psychological injuries as a result of the accident. Sims received extensive medical treatment for cervical and low back pain, leg pain, post concussion syndrome and post-traumatic stress syndrome. However, the extent and severity of plaintiff's injuries is subject to conflicting medical testimony.
The record reveals that immediately after the accident Sims was admitted to Baton Rouge General Hospital for treatment. He was discharged on January 11, 1984. Thereafter, he was evaluated or treated by numerous physicians and chiropractors.
Plaintiff was subsequently referred by his attorney to Dr. Kenneth Vogel, a neurosurgeon, for evaluation of persistent back and leg pain. Dr. Vogel testified by deposition. CAT scans, x-rays and discograms were performed on plaintiff in order to aid in diagnosing the organic cause of his back pain. Dr. Vogel diagnosed plaintiff to be suffering from a herniated disc and recommended that plaintiff undergo a chymopapain injection for attempted dissolution of the disc. This procedure was performed by Dr. Vogel on November 28, 1984.
Plaintiff was last examined by Dr. Vogel on February 21, 1985. As a result of a CAT scan and examination performed on that date, Dr. Vogel determined that the chymopapain procedure had been successful. There was no discernible herniation of the disc, plaintiff's pain was resolving and the muscle spasms were diminishing. Should plaintiff experience 80% to 90% pain relief as expected, he would still retain a 10% to 15% functional disability. In Dr. Vogel's opinion plaintiff would then be able to return to work, however, he would be unable to lift objects weighing greater than fifty pounds. Presumably, plaintiff would no longer be able to perform the heavy manual labor required in his former profession. Dr. Vogel expressed concern that plaintiff may develop an unstable back which may require future surgery. $5,000 is the estimated cost of the surgery.
Dr. Allen S. Joseph, neurosurgeon, was the treating physician during Sims' hospitalization immediately following the accident. He testified that during the course of his hospitalization, Sims complained of behavorial changes and of leg, back and head pain. Dr. Joseph was unable to detect an organic abnormality which could be the cause of plaintiff's complaints. He was concerned that Sims' continued complaints had a psychiatric overlay and, therefore, recommended that Sims undergo a psychiatric evaluation upon discharge from the hospital.
Plaintiff was examined by Dr. Joseph on April 16, 1985, at the request of defense counsel. Based on the neurological examination and upon review of the prior CAT scans, x-rays and medical records, Dr. Joseph was of the opinion that Sims had never suffered a herniated lumbar disc. In his opinion there was no change in the x-rays and CAT scans taken before and after the chymopapain procedures. Dr. Joseph testified that he could find no objective signs of a current disability and that Sims is presently able to resume his former profession.
Dr. C.B. Scrignar, psychiatrist, testified by deposition that Sims suffers from posttraumatic stress syndrome. As is consistent with this disorder, some or much of the pain complained of by Sims may be caused by stress and anxiety. In his opinion Sims is psychiatrically disabled. Approximately one year of psychotherapy would be required to resolve this disorder. The therapy is estimated to cost approximately $5,000.
Plaintiff was awarded the sum of $234,203.09. Oral reasons for judgment reflect that $200,000 was awarded in globo and $34,203.09 was awarded as special damages ($32,703.09 for medical expenses and $1,500 for property damage).
*328 General and special damages may be awarded in globo and such award will not be set aside absent an abuse of discretion. Smith v. Travelers Indemnity Co. of Rhode Island, 374 So.2d 708 (La.App. 1st Cir.1979). "It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review ... be considered either excessive, or insufficient." Reck v. Stevens, 373 So.2d 498, 501 (La.1979) (footnotes omitted). In order to determine whether the trier of fact "abused its discretion by making an inadequate award, the evidence must be viewed in the light most favorable to the defendant." Cutchall v. Great American Pump Co., 460 So.2d 1106, 1115 (La.App. 2d Cir.1984).
We have carefully reviewed the record, including the conflicting medical testimony. Although the in globo award is on the low side, we find no abuse of the trial court's discretion. Accordingly, we affirm that portion of the trial court judgment.

ATTORNEYS' FEES
Becnel alleges that the trial court erred in finding that Sledge was discharged without cause and in awarding Sledge 25% of the legal fee.
Sledge was retained by Sims on February 8, 1984. This suit was filed in forma pauperis by Sledge, on behalf of Sims, on March 20, 1984. It is uncontested that Sledge held numerous telephone conversations with and on behalf of plaintiff in prosecution of this action. Additionally, Sims was referred by Sledge to Dr. Adatto, an orthopedist, for medical evaluation. Sledge also attempted to stave off Sims' creditors by writing letters to them. He arranged for Sims to obtain a loan from a finance company. By letter dated May 14, 1984, Sims dismissed Sledge due to Sledge's failure to pay Sims' medical bills and court costs. On May 12, 1984, Sims retained Becnel who paid Sims' court costs and medical expenses. Becnel prosecuted this action through appeal.
Unfortunately, an attorney is not prohibited from advancing costs of litigation and medical treatment to his client. Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976). However, an attorney's failure or refusal to advance such costs to a client is not a just cause for the attorney's dismissal by the client, notwithstanding appellant's implications to the contrary.[1] We have reviewed the record *329 and conclude that the trial court correctly determined that Sledge was dismissed without cause.
"Unless discharged for cause, an attorney who has been dismissed by his client is entitled to be reimbursed for his services on a quantum meruit basisregardless of whether the attorney was initially retained under a contingency, set fee, or hourly retainer." Fowler v. Jordan, 430 So.2d 711, 715 (La.App. 2d Cir.1983). The fee should be apportioned between the attorneys "according to the respective services and contributions of the attorneys for work performed and other relevant factors." Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 118 (La.1979).
A trial judge has great discretion in setting an attorney fee. This award should not be modified on appeal absent a showing of abuse of discretion. Aetna Finance Co. of Baton Rouge v. Perkins, 448 So.2d 121 (La.App. 1st Cir.1984). After reviewing the record, we are unable to find that the trial judge abused his discretion in apportioning the attorney fee. Accordingly, we affirm the judgment of the trial court. Appellants are to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] Payment of medical bills of at least three doctors is cited by appellant as an accomplishment that mitigates in favor of increasing appellant's percentage of the fee and decreasing intervenor's. It is also indicated as one of the reasons the client was dissatisfied with intervenor and discharged him, the argument being the discharge was with cause. Although this record reflects a denial by the client that he was able to obtain any money for any personal expenses or that he obtained the services of his second attorney other than because of a recommendation of his father, the reason he gave for firing his original attorney is telling:

Q. So, it is your testimony, Bernell, that you fired me because of the fact I wasn't providing medical treatment for you, is that it?
A. Basically, yeah. The medical and the creditors, you knowthe payments and stuffthe load I had on me, you know.
The obviously well intended interpretation of Disciplinary Rule 5-103(B) in Louisiana State Bar Association v. Edwins, 329 So.2d at 446 (La.1976), to allow "a lawyer's guarantee of necessary medical treatment for his client, even for a non-litigation related illness ... if the lawyer for reasons of humanity can afford to do so", and to authorize as expenses of litigation, "the advance or guarantee by a lawyer to a client (who has already retained him) of minimal living expenses, of minor sums necessary to prevent foreclosures, or of necessary medical treatment", Id. at 445, has created problems within the profession that override any benefit to the client. Edwin, in conjunction with Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La. 1979) allowing the client to withdraw from the contingency fee contract with relative impunity, pretty well guarantees that clients will not remain with the attorney who does not gear his practice to providing this type of service. No attorney solicitation is necessary. The reputation of providing these services is enough to draw the client. A great number of capable, reliable attorneys, who do not advance monies because of their own ethical considerations or because they cannot "afford to do so", are deprived of personal injury clients. The profession is demeaned. Surely, it is time to reconsider this whole area. A first step would be the approach to the contingent fee contract recommended by Justice Dixon in his dissent in Saucier, 373 So.2d at 119-121.