666 So.2d 345 (1995)
Shannon O'ROURKE, Wife of/and George O'Rourke
v.
Mark CAIRNS, D.D.S.
No. 95-CA-381.
Court of Appeal of Louisiana, Fifth Circuit.
November 28, 1995.
Writ Granted March 15, 1996.
*346 Stephen B. Murray and Patricia R. Murray, New Orleans, for Plaintiff In Intervention/Appellant.
Don C. Gardner, Harahan and Michael A. Fenasci, New Orleans, for Defendants In Intervention/Appellees.
Before DUFRESNE, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
Intervenor, Roland Belsome, appeals a trial court judgment which granted him $25,000 in legal fees for his representation of George O'Rourke. For the following reasons, we affirm.

FACTS
On February 17, 1986, Roland Belsome ("Belsome") entered into a contingency fee contract with George O'Rourke ("O'Rourke") to represent O'Rourke in a medical malpractice action against Mark Cairns, D.D.S.[1] The contract called for Belsome to receive forty percent of any sums recovered after the filing of the lawsuit. After conducting discovery, Belsome submitted the case to the medical review panel. The review panel ruled that Dr. Cairns failed to satisfy the requisite standard of care in his treatment of O'Rourke. Following this ruling, Belsome filed a petition for damages in the 24th Judicial District Court on behalf of O'Rourke against Dr. Cairns. The case was set for *347 trial twice but was continued on both occasions. On July 25, 1991, while the case was still pending, O'Rourke dismissed Belsome.
After terminating Belsome, O'Rourke entered into a contingency fee contract with Michael Fenasci ("Fenasci"). Subsequently, with the approval of O'Rourke, Fenasci engaged the services of Don Gardner ("Gardner") as co-counsel. In February of 1993, Fenasci and Gardner tried the case and won a judgment of $1,580,000. The trial court reduced this judgment to $500,000 due to the statutory cap on medical malpractice actions. Eventually, in October of 1993, Fenasci and Gardner settled O'Rourke's claim, receiving $65,000 from Dr. Cairns and $500,000 from the Louisiana Patient's Compensation Fund.
Following his dismissal, Belsome filed a petition of intervention in O'Rourke's suit to recover fees and costs owed him under the contingency fee contract of February 17, 1986. After O'Rourke's claim was settled, the trial court held a hearing to determine the amount of the fee owed to Belsome for his efforts on behalf of O'Rourke. The parties stipulated that the amount of legal fees in dispute was $206,000.
The trial court ruled that Fenasci and Gardner deserved "greater remuneration because of the time, labor and the results they obtained for plaintiff." Accordingly, the intervenor Belsome was awarded $25,000 as his fee, and Fenasci and Gardner received the remaining $181,000. Further, the court found that Belsome had been discharged for cause. From this judgment, intervenor has appealed.

ASSIGNMENTS OF ERROR
Belsome asserts the following errors by the trial court: (1) the trial court erred in considering whether intervenor was discharged for cause; (2) the trial court erred in finding that intervenor did not contribute significantly to the favorable result obtained in the case; (3) the trial court erred in holding that intervenor could only receive funds on an hourly basis, rather than a proportionate share of the contingency fee; and (4) the trial court erred in excluding proffered expert testimony.

ANALYSIS
Belsome initially asserts that the trial court erred in considering whether he was discharged for cause. Relying on the landmark case of Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979), the intervenor argues that it is no longer necessary for a trial court to determine whether an attorney employed under a contingency fee contract has been discharged for cause. That is, for purposes of determining the fee earned by a discharged attorney, the intervenor asserts that the Louisiana Supreme Court has done away with the distinction between a termination for cause, as opposed to without cause.
Before addressing intervenor's first argument, it is appropriate to give a brief summary of Saucier because this decision bears heavily on the instant case. In Saucier, a client discharged his attorney without cause and subsequently employed a second attorney, who settled the client's claim. 373 So.2d at 104. The first attorney intervened in the suit and filed a copy of his employment contract with the clerk of court, pursuant to La.R.S. 37:218.[2] On original hearing, the Court affirmed a judgment which required the client to pay full one-third contingency *348 fees to both of the attorneys.[3] On rehearing, the Court held that a client who discharges an attorney is only obligated to pay one contingency fee. Id. at 118. The amount of this fee is determined by the "highest ethical contingency percentage to which the client contractually agreed in any of the contingency fee contracts which he executed." Id. The fee is then allocated to the various attorneys involved in the case based on the amount each has earned under the factors set forth in Rule 1.5 of the Rules of Professional Conduct. Id.
The Court based its holding on the fact that La.R.S. 37:218 only grants an attorney a privilege to collect his fee out of the proceeds of the client's claim, as opposed to a vested interest in the claim itself. Id. at 117. Further, based on the Code of Professional Responsibility (now the Rules of Professional Conduct), the Court recognized that an attorney's fee must be reasonable; that is, an attorney may not receive an unearned or clearly excessive fee. Id. at 116; see Rule 1.5, Rules of Professional Conduct. Therefore, the Court concluded that "permitting a lawyer to reap in full measure the contracted-for fee provided in a contingency fee contract without providing all or substantially all of the legal services contemplated by the contract clearly violates" the pertinent ethical standards. Id.
In regards to "cause", Saucier is important because previously an attorney who was discharged without cause was entitled to his entire contingent fee, despite the fact that he had not performed all of the legal services contemplated by his employment contract. As the Saucier Court recognized, however, such a result violated the Code of Professional Responsibility because it allowed an attorney to receive an unearned fee. Nevertheless, in reaching its decision, the Court acknowledged the societal importance of the contingency fee contract. Id. at 118. Additionally, the Court recognized the risk encountered by attorneys who undertake representation based upon a contingent fee, as well as the expectation of those attorneys that they will be compensated by receiving a percentage of the recovery, as opposed to on an hourly basis. Id. Therefore, the Court concluded that the "amount prescribed in the contingency fee contract, not quantum meruit, is the proper frame of reference for fixing compensation for the attorney prematurely discharged without cause." Id.
It is important to note that in Saucier the intervenor attorney had been discharged without cause. Here, the intervenor has been discharged for cause.[4] Nevertheless, Belsome contends that the rule of Saucier for determining compensation applies equally to attorneys discharged for cause. That is, the intervenor argues that his fee should have been determined as a percentage of the contracted for contingency fee, rather than on an hourly basis.
We disagree because such a result goes beyond the holding of Saucier. As discussed above, Saucier mandates that the contingency fee is the proper frame of reference for determining the fee of an attorney discharged without cause. That is not the case here as Belsome was discharged for cause. Therefore, as will be discussed in the intervenor's third assignment of error, we find that the trial court did not err in calculating Belsome's fee on an hourly basis.
Further, we reject the intervenor's contention that the trial court erred in considering whether he had been discharged for cause. The fact that an attorney has performed in such a manner as to give his client cause to terminate his employment is a relevant consideration in determining the amount of the fee earned by the attorney. Thus, we conclude that the trial court did not err in considering whether O'Rourke had cause to terminate Belsome's representation.
*349 The second issue raised by the intervenor is whether the trial court was correct in finding that he did not contribute significantly to the favorable result obtained in the case. This assignment of error goes to the heart of the trial court's decision that Belsome only earned $25,000 of the $206,000 in legal fees awarded in this case. As discussed earlier, Saucier dictates that the amount of the fee earned by Belsome be determined by looking to the factors enumerated in Rule 1.5 of the Rules of Professional Conduct, which provides in pertinent part:
(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.
The trial court's conclusions pertaining to Rule 1.5 are factual and thus are subject to the manifest error standard of review. See Rosell, supra. In regards to number (1) above, the time and labor required by the representation, Belsome testified that he worked 500 hours on his representation of O'Rourke. However, Belsome stated that he did not keep a record of his time because he was working on a contingency fee contract. Therefore, Belsome had to reconstruct the time he spent on this case. The trial court made a credibility determination that Belsome exaggerated the amount of time he had worked. Instead of 500 hours, the trial court concluded that Belsome had worked approximately 200 hours on the case. Based on our review of the record, we find that the trial court was not clearly wrong in this determination.
In regards to number (7) above, the experience, reputation, and ability of the lawyer performing the service, the trial court noted that this was the first medical malpractice case handled by Belsome. The record confirms this finding. Additionally, O'Rourke testified that Belsome was uncommunicative, appeared drunk at O'Rourke's home, confessed that he "didn't know what he was doing", and made many misrepresentations regarding the suit. Thus, the trial court concluded that Belsome had behaved in an unprofessional manner towards O'Rourke. This finding, also, is supported by the record and will not be disturbed.[5]
In short, the record supports the conclusion that Fenasci and Gardner earned a majority of the fee in this case. These two attorneys were successful in trying the case and, later, in obtaining a favorable settlement for O'Rourke.
The intervenor's third assignment of error involves the manner in which the trial court determined his fee. We have previously determined that the trial court did not err in calculating the intervenor's fee on an hourly basis rather than as a percentage of the contracted for contingency fee. The trial court employed a quantum meruit approach and determined the fee by multiplying 200, the number of hours worked by Belsome, by $125 per hour, resulting in a fee of $25,000. We find no manifest error with the trial court's findings and, accordingly, we affirm.
Intervenor's final assignment of error deals with the trial court's exclusion of certain expert testimony. Intervenor contends that the trial court erred in refusing to hear the testimony of Russ Herman ("Herman"), *350 an attorney tendered as an expert in the field of personal injury litigation and fee distribution. Belsome argues that the trial court's exclusion of Herman's testimony contravenes Louisiana jurisprudence because opinion testimony "is not to be excluded solely because it embraces an ultimate factual issue to be decided by the trier of fact." Doyle v. Picadilly Cafeterias, 576 So.2d 1143, 1151-52 (La. App. 3d Cir.1991).
Having reviewed the record, we find that the trial court excluded the testimony because it was cumulative, not because it embraced an ultimate factual issue. La.C.E. art. 403 provides that relevant evidence may nonetheless be "excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." The trial court heard testimony from all of the attorneys involved as to the amount of work each performed and the manner in which each contributed to the favorable result obtained in this case. The proffered expert testimony would merely have reiterated Belsome's contributions to the case. Thus, the testimony would have been cumulative or, in the words of article 403, a "waste of time." Therefore, the trial court did not err in excluding Herman's testimony.
In summary, we affirm the judgment of the trial court in all respects.
AFFIRMED.
NOTES
[1] O'Rourke's claim centered on Dr. Cairns's negligent performance of two root canals. Following the botched root canals, Dr. Cairns negligently prescribed the painkiller percodan to O'Rourke, thereby causing O'Rourke to become addicted to the drug.
[2] In pertinent part, La.R.S. 37:218 provides:

A. By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property. In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue, or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition had been made.
[3] Thus, the client's $75,000 settlement was distributed as follows: client$25,000; client's first attorney$25,000; client's second attorney $25,000. Saucier, 373 So.2d at 108 (Dennis, J., dissenting on original hearing).
[4] The trial court's finding that Belsome was discharged for cause is factual and, as such, is subject to the manifest error standard of review. Rosell v. ESCO, 549 So.2d 840 (La. 1989). Based upon our review of the record, we conclude that the trial court's finding is reasonable and supported by the evidence. Accordingly, it will not be disturbed on appeal.
[5] The foregoing findings provided the basis for the trial court's determination that Belsome was discharged for cause. Again, the trial court's finding is not manifestly erroneous and will not be disturbed.