hBAGNERIS, Judge.
John Michael Lawrence (“Lawrence”), appellant, seeks to reverse the trial court’s apportionment of attorney’s fees. The trial court apportioned 60 percent to Marie A. Bookman (“Bookman”) and 40 percent *32 to Lawrence for legal service rendered in a medical malpractice lawsuit. We affirm.

FACTS

Bookman was retained as an Attorney to represent Kim Boutte in a medical malpractice lawsuit in March 1992. Bookman and Boutte entered into an agreement where Bookman would receive a contingency fee of 40 percent of any settlement proceeds, once a lawsuit had been filed. Bookman filed a lawsuit in December 1995, in Civil District Court in Orleans Parish in New Orleans, Louisiana.
Bookman retained the legal services of Lawrence in April 1995 to assist her in handling Bouttee’s medical malpractice claim. Bookman hired Lawrence as an Independent Contractor. Lawrence agreed to accept 85 percent of Bookman’s attorney’s fees.
LOn July 17, 1997, Lawrence withdrew from the case and terminated his agreement with Bookman prior to completing the legal services promised and prior to the completion of the case. Lawrence filed an Intervention, in connection with his withdrawal. Bookman filed a denial of Lawrence’s Intervention denying his allegation.
Bookman was the attorney of record on several lawsuits she filed on behalf of Boutte. On February 8, 1998 Boutte called Bookman’s office and left a voice mail requesting a meeting with Bookman regarding the status of her cases. On February 9, 1998, Bookman’s secretary returned Boutte’s phone call and left a voice message. On February 10, 1998 Boutte called regarding her settlement check for an automobile accident claim. February 11, 1998, Boutte came to Bookman’s office to receive her settlement check. Also, while at the Bookman’s office she requested a meeting with Bookman regarding the medical malpractice claim. On February 12, 1998, Boutte wrote a letter terminating Bookman’s legal services on her remaining claims and cases. On February 27, 1998, Lawrence forwarded a letter to Bookman, to advise her of his representation of Boutte in the medical malpractice lawsuit and to request a copy of the files. Book-man responded to Lawrence’s letter on March 2,1998.
On June 25, 1999 settlement was reached in the medical malpractice lawsuit. On June 28, 1999, the settlement agreement was recorded in the trial court’s record. On July 8, 1999 a status conference was held to discuss the Intervention on Attorney’s fees. The trial court made a recommendation for settlement. The trial court recommended a fee split of 60 percent to Bookman and 40 percent to Lawrence. Bookman declined and the matter was set for trial on December 13, 1999.
|3On December 13, 1999 during the trial, Lawrence attempted to enter into evidence the deposition transcript of himself and for Boutte in lieu of live testimony. Bookman objected and the trial court sustained the objection. Lawrence proffered the deposition transcripts of himself and Boutte into the record.
The trial court ruled that Bookman was entitled to 60 percent of the attorney’s fees and Lawrence was entitled to 40 percent of the attorney’s fees. The trial court had ruled earlier, during the motion for summary judgment and partial summary judgment that Boutte had not terminated Bookman for cause. Lawrence appeals the trial court judgment.

LAW AND DISCUSSION

The pivotal issue is whether the trial court erred in finding that Bookman was discharged without cause and in apportioning Bookman 60 percent of the attorney’s *33 fees and Lawrence 40 percent. On appeal, Lawrence makes the following contentions:
(1) The trial court erred when it failed to find Bookman was discharged for cause;
(2) The trial court erred when it failed to consider his own deposition testimony and Bouttee’s in lieu of their live testimony.

STANDARD OF REVIEW

It is well settled that a court of appeal may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. |4Where there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous or clearly wrong. Appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
However, where documents or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or 'clear wrongness even in a finding purportedly based upon a credibility determination. Where such factors are not present, and a fact-finder’s finding is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989). See also, Hill v. Morehouse Parish Police Jury, 95-1100 (La. 1/16/96), p. 4, 666 So.2d 612, 614; Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 745; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Of course, where trial court legal errors have tainted the fact finding process, the judgment is not reviewed under the manifest error standard and, if the record is complete, the appellate court may make a de novo review of the record and determine the preponderance of the evidence. Rosell v. ESCO, supra, 549 So.2d at 844 (La.1989); Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975). Contrary to Lawrence’s contentions, we find no basis for de novo review of the record in this case.
We are instructed that before a fact-finder’s verdict may be reversed, we must find from the record that a reasonable factual basis does not exist for the verdict, and that the record establishes the verdict is manifestly wrong. Lewis v. State Through Dept. of Transp. and Development, 94-2370 (La.4/21/95), 654 So.2d 311, 314; Stobart v. State through Dept. of Transp. and Development, supra. Although we accord deference to the fact-finder, we are cognizant of our constitutional duty to review facts, not to decide if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court’s verdict was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support. Ambrose v. New Orleans Police *34 Department Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 221; Ferrell v. Fireman’s Fund Ins. Co., supra.

DISCHARGE FOR CAUSE

“Unless discharged for cause, an attorney who has been dismissed by his client is entitled to be reimbursed for his services on a quantum merit basis—regardless of whether the attorney was initially retained under a contingency, set fee, or hourly retainer.” Hebert v. State Farm Insurance Company, 588 So.2d 1150 (La. App. 1st Cir.1991); Sims v. Selvage, 499 So.2d 325 (La.App. 1 Cir.1986)
The fee should be apportioned between the attorneys “according to the respective services and contributions of the attorneys for work performed and other relevant factors.” Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 118 (La. 1979).
LA trial judge has great discretion in setting an attorney fee. This award should not be modified on appeal absent a showing of abuse of discretion. Aetna Finance Co. of Baton Rouge v. Perkins, 448 So.2d 121 (La.App. 1st Cir.1984).
In the instant case, the trial court in its written reasons for judgment stated the following;
“.... Ms. Bookman was not discharged for cause, and the jurisprudence holds that an attorney not discharged for cause is entitled to payment for her services on a quantum merit basis, and where “the client subsequently retains another attorney, the fees should be apportioned accordingly to the respective services and contribution of each attorney, as well as any other relevant factor.” (Citation omitted).
Further, the trial court outlined its rationale for the 60%-40% apportionment of attorney’s fees in its written reasons for judgment. The trial court apportioned the attorney’s fees between Bookman and Lawrence according to the respective services and contributions of the attorneys for work performed. The trial court stated the following; Boutte hired Bookman initially for legal services. Bookman, subsequently, entered into an oral contract with Lawrence. Bookman supervised all the work done by Lawrence and met with him frequently to discuss the status and progress of the case. Bookman made court appearances. Lawrence prepared the submissions to the Medical Review Panel. Lawrence sought to obtain experts, propounded discovery, and answered discovery. Lawrence terminated his contract with Bookman prior to his obtaining an expert. Bookman was granted a continuance by the trial court to obtain an expert for trial. Bookman was discharged without cause and Lawrence re-enrolled and obtained an expert, supplemented the petition, and settled the case. The attorney for the defendant stated that settlement had nothing to do with the new pleadings filed by 17Lawrence or personalities of the counsel of record rather it was based on the IME the defendants had obtained that Boutte’s condition had worsened.
After reviewing the record, we are unable to find that the trial judge abused her discretion in apportioning the attorney fee and correctly determining that Book-man was not dismissed with cause. Thus, we find that Lawrence’s contention on this issue is without merit. Because we have found that Bookman was not dismissed for cause, we reject Lawrence’s argument on O’Rourke v. Cairns, D.D.S., 95-381 (La.App. 5 Cir. 11/28/95); 666 So.2d 345, writ granted, 95-3054 (La.3/14/96); 668 So.2d 1149.

*35
USE OF DEPOSITION TESTIMONY

LSA-C.C. P. art. 1450 establishes the parameters for the use of deposition testimony at trial:
A. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
[[Image here]]
(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:
(a) That the witness is unavailable; [or]
(b) That the witness resides at a distance greater than one hundred miles from the place of trial or hearing or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition
| sThus, the requirements for the admissibility of the deposition of a witness are twofold: (1) the deposition must be admissible under the Louisiana Code of Evidence and (2) the witness must be either (a) unavailable; (b) residing over one hundred miles from the place of trial; or (c) in another state without provocation by the party offering the deposition. The issue presented is whether Mr. Lawrence or Ms. Boutte was unavailable to testify at trial and/or whether Ms. Bouttee’s absence was self-procured.
A party is not legally “unavailable” as a witness simply because he eschews the trial. Hoy v. Gilbert, 98-1565 (La.3/2/99); 754 So.2d 207. Additionally, a party whose absence from trial is attributable to his choice to be out of state on the date of trial is considered to have procured his own absence. Bruins v. United States Fleet Leasing, Inc., 430 So.2d 386 (La.App. 3 Cir.1983); Wehbe v. Waguespack, 98-475 (La.App. 5 Cir. 10/28/98); 720 So.2d 1267, writs denied, 98-2907 (La.1/15/99); 736 So.2d 211 and 98-2970 (La.1/15/99); 736 So.2d 213. A party who is not legally unavailable or who is intentionally absent from trial due to his choice to be out of state may not submit his deposition testimony in lieu of live testimony.
“The trial court has much discretion in determining whether to allow the use of deposition testimony at trial, and its decision will not be disturbed upon review in the absence of an abuse of that discretion.” State in the Interest of Bordelon v. Guichard, 94-1795, p. 10 (La.App. 1 Cir. 5/5/95); 655 So.2d 1371, 1378, writ denied, 95-1405 (La.9/15/95); 660 So.2d 454.
In the instant case our review of the record clearly shows that Lawrence was present on the day of the trial and could have taken the stand and testified but instead offered his deposition testimony to the court. He was legally available |3and could have taken the stand to testify. Thus, we find that he was not entitled to introduce his deposition testimony in lieu of live testimony.
Boutte was not present on the day of the trial nor did Lawrence give any explanation for her absence. Therefore, we find that Boutte was legally available and her absence was self-procured. Accordingly, she was not entitled to introduce her deposition testimony under Article 1450. The trial court did not error or abuse its discretion in excluding the depo *36 sition testimony. This contention is without merit.
Accordingly, we affirm the judgment of the trial court. Appellant is to pay all costs of this appeal.

AFFIRMED.