448 So.2d 121 (1984)
AETNA FINANCE COMPANY OF BATON ROUGE
v.
Sidney A. PERKINS and Patsy Perkins.
No. 83 CA 0357.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
*122 Stephen R. Wilson, Keogh & Keogh, Baton Rouge, for plaintiff.
Carolyn F. Lahr, Fayard, Morrison & Kuhn, Denham Springs, for defendants.
Before SHORTESS, LANIER and CRAIN, JJ.
*123 LANIER, Judge.
This matter commenced as a suit by the Aetna Finance Company of Baton Rouge (Aetna)[1] against Sidney Perkins and Patsy Perkins on two promissory notes alleging a balance due of $2,959.48 and for the return of an overpayment by Aetna on one of the notes of $1,038.58. The Perkinses filed an answer and a reconventional demand contending that Aetna violated the disclosure requirements of the Truth in Lending Law (15 U.S.C.A. § 1601, et seq.) and failed to credit them with unearned interest when suit was filed in violation of the Louisiana Consumer Credit Law (La.R.S. 9:3510, et seq.). The Perkinses prayed that the main demand be dismissed and that they be awarded a civil penalty on the reconventional demand of $1,000 with legal interest thereon from date of judicial demand until paid and an attorney fee of $2,500. The district court (without assigning reasons) granted judgment in favor of the Perkinses on the main demand and dismissed Aetna's suit. The district court granted judgment in favor of the Perkinses against Aetna on the reconventional demand for the following amounts:
(1) $2,815.74, representing twice the amount of the finance charge on one of the promissory notes as provided by the Truth in Lending Law;
(2) $1,407.87, representing the loan finance charge on one of the notes pursuant to the authority of the Louisiana Consumer Credit Law; and
(3) $2,500.00, representing a reasonable attorney fee.
The district court cast Aetna for the costs, but did not award interest on any portion of the award. This suspensive appeal followed. The Perkinses have not appealed or answered the appeal.

FACTS
On March 13, 1980, Sidney and Patsy Perkins went to Aetna's office and applied for a $500 loan to pay for an anticipated hospital bill. In their application for this credit, they listed the following obligations:

(1) First National Bank of Denham
 Springs - $ 357.08
(2) VISA - 400.00
(3) Master Charge - 400.00
(4) Aetna on account number
 XXXXX-X - 1,561.41
(5) Aetna on account number
 XXXXX-X - 103.51
 _________
 TOTAL $2,822.00

Hopson P. Williams, the manager of the Aetna office at that time, advised the Perkinses that he would approve the loan if they agreed to consolidate their bank and Aetna obligations with the new loan into one note. The Perkinses agreed to this proposal.
The Perkinses returned to the Aetna office on March 14, 1983, to execute the loan documents. When they arrived at the Aetna office, they were advised that there were mistakes on some of the documents and they had to be redone. The Perkinses ultimately signed two separate notes. The first (large note) was for an amount financed of $2,624.13 with a finance charge of $1,407.87 for a total of $4,032 to be paid in 36 monthly payments of $112 each commencing on April 14, 1980. The second note (small note) was to finance an accident insurance policy. The amount financed on the small note was $100, the finance charge was $12.92 and it was to be paid in 12 monthly payments of $9.41 each commencing on April 14, 1980. The Perkinses were to receive $490.01 from the large note. However, Aetna gave them a check for $1,528.59, which sum represented the payoff of $1,038.58 on Aetna account number XXXXX-X and the balance due the Perkinses of $490.01. Mrs. Perkins testified at the trial that at the time of the loan closing, Williams told her that the extra money was to pay the VISA and Master Charge accounts. Apparently, Aetna sent a check to the First National Bank of Denham Springs to pay off that obligation. Aetna also apparently cancelled their account *124 number 36020-6 with a rebated balance due of $1,038.58 and account number XXXXX-X with a rebated balance due of $94.40. The Perkinses took the check for $1,528.59 and deposited it in their checking account.
On the night of March 14, 1983, Williams called Mrs. Perkins and advised her that the sum of $1,038.58 was paid to them by mistake and was an overpayment on the note and should have been applied to the cancellation of account number XXXXX-X. He demanded that this amount be returned to Aetna in cash. Williams contacted the Perkinses on several occasions after this date to resolve the dispute, however, the Perkinses did not return the money nor did they make any payment on either note. This suit was filed on May 27, 1980.

DISCLOSURE VIOLATIONS
Aetna does not contest the applicability of the Truth in Lending Law to the loan transactions with the Perkinses. Incorporated in the Aetna promissory notes is a form for making the disclosures required by the Truth in Lending Law. The large note shows that the amount financed is $2,624.13 and that the finance charge is $1,407.87. The amount financed is $1,980.07 for money paid to the Perkinses or on their behalf and $644.06 in insurance charges and official fees. The original document shows in handwriting that the following sums were paid to the Perkinses or on their behalf:
(1) $1,038.58the balance due on Aetna account number XXXXX-X;
(2) $490.01paid to the Perkinses;
(3) $94.40the balance due on Aetna account number XXXXX-X; and
(4) $357.08the balance due at the First National Bank of Denham Springs.
This original note also shows in handwriting that the loan is secured by a chattel mortgage on all of the household goods belonging to the Perkinses, but the mortgaged chattels are not individually listed or described. This original note is signed by Sidney and Patsy Perkins as makers and is witnessed by Hopson P. Williams and Estella Robinson.
Both the Truth in Lending Law and the Truth in Lending Regulations promulgated by the Board of Governors of the Federal Reserve System (12 C.F.R. § 226.1, et seq.) require a creditor to disclose to the customer the amount of credit of which the customer will have the actual use or which will be paid to him or for his account or to another person on his behalf. 15 U.S.C.A. § 1639(a)(1); 12 C.F.R. § 226.8(d)(1). They also require that the creditor disclose a description of any security interest held or acquired by him in connection with the extension of credit with a clear identification of the property to which the security interest relates. 15 U.S.C.A. § 1639(a)(8); 12 C.F.R. § 226.8(b)(5). The Truth in Lending Regulations also require that when the disclosures are made the creditor shall furnish the customer with a duplicate of the instrument or a statement by which the required disclosures are made and on which the creditor is identified. 12 C.F.R. § 226.8(a).
Sidney Perkins testified that he was given a duplicate of what he signed before he left the Aetna office on March 14, 1980, and it was filed in evidence. Hopson P. Williams did not discuss the terms of the loan agreement with the Perkinses either before or after they signed. Perkins asked Williams to explain the figures on the document, but he did not. Patsy Perkins testified that she was also given a duplicate of what she signed, and it was filed in evidence. Williams did not discuss the terms of the loan with them. No handwritten matters (the amounts paid to the Perkinses or on their behalf and the chattel mortgage) were on the original document when the Perkinses signed it. Williams told her that they were being given an extra $1,000 to pay the Master Charge and VISA accounts. Mrs. Perkins subsequently used the money for that purpose. She did not know why her signature appeared on the original and not on the duplicate.
There are obvious discrepancies between the original note and disclosure statement *125 and the duplicates which were given to Sidney and Patsy Perkins. The duplicates are not filled in to show the money paid to the borrowers or on their behalf and do not show that a chattel mortgage was given on all of the household goods of the borrowers.[2] The duplicate copies also have type written numbers in the area marked disbursement of amount financed which do not appear on the face of the original. The signatures of Patsy Perkins and Estella Robinson are not on the duplicates.
The only witness called by Aetna at the trial was Tom Greinstaff, who was the Aetna office manager at the time of the trial. He testified that the usual procedure of Aetna was to put all pertinent information on the note and disclosure and then give a copy to the borrower. He did not know what Williams did when the loans were signed because he was not present. He testified that Williams was no longer with Aetna but that Estella Robinson was still an employee of the company.[3] Greinstaff speculated on cross-examination by counsel for the Perkinses that they got copies of the voided transaction but admitted that he did not really know what happened because he was not present.
Although the trial judge did not give reasons for judgment, it is apparent from his ruling that he accepted the testimony of the Perkinses. After considering this testimony and examining the original and duplicates of the note and disclosure forms, we find that Aetna failed to comply with the disclosure requirements of the Truth in Lending Law and Regulations because it failed to properly disclose or place on the duplicate copies the money paid to the borrowers or on their behalf and the chattel mortgage on all of the borrowers' household goods. Ingram v. Reliable Finance Company, Inc., 410 So.2d 768 (La. App. 3rd Cir.1981); Reliable Credit Service, Inc. v. Bernard, 339 So.2d 952 (La. App. 4th Cir.1976), writs denied, 341 So.2d 1129 (La.1977) and 342 So.2d 215 (La.1977). Cf. Baker Bank and Trust Company v. Matthews, 401 So.2d 1246 (La.App. 1st Cir. 1981). Because Aetna did not make the proper disclosures or place the disclosures on the borrowers' duplicate copies, the Perkinses are entitled to the statutory penalties provided by the Truth in Lending Law.
The Perkinses did not introduce evidence at the trial to show that there were disclosure violations attributable to the execution of the small note and have not contended such in their appellate brief. The note agreement shows that the amount borrowed was $100, the finance charge was $12.92, the annual percentage interest was 23.01% and that the note was to be paid in 12 monthly installments of $9.41 each commencing on April 14, 1980. This note is signed by Hopson P. Williams on behalf of Aetna and by Sidney Perkins. Patsy Perkins did not sign this note. It was permissible under the provisions of the Truth in Lending Law in force at the time of the execution of this note to incorporate the disclosure information in the note signed by the borrower. 15 U.S.C.A. § 1639(b). The Perkinses have failed to prove that there were disclosure violations with reference to this note. The district court judgment indicates that this portion of the relief requested by the Perkinses was not granted. That portion of the district court judgment has not been contested by appeal or answer to the appeal.

DISCLOSURE VIOLATION PENALTIES
When a borrower proves that there has been a failure to comply with the disclosure requirements of the Truth in Lending Law and Regulations, he is entitled to civil penalties in accordance with the pertinent portion of 15 U.S.C.A. § 1640(a) as follows:
(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this *126 part or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of
(1) any actual damage sustained by such person as a result of the failure;
(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, or (ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; or

. . . . .
(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.
(Emphasis added).
The Perkinses did not allege or prove actual damage as a result of Aetna's failure to disclose. The district judge granted an award of $2,815.74, representing twice the finance charge of $1,407.87 pursuant to 15 U.S.C.A. § 1640(a)(2)(A)(i). This award is excessive because the statute limits such awards to not more than $1,000. Baker Bank and Trust Company v. Matthews, 401 So.2d at 1248; Gaines v. Phills, 389 So.2d 445 (La.App. 2nd Cir.1980), writ denied, 395 So.2d 1363 (La.1981). However, a creditor who fails to properly disclose to solidary obligors (such as the Perkinses in the instant case) is liable for this penalty to each of the solidary obligors. Liberty Loan Corporation v. Stanley, 389 So.2d 1355 (La.App. 3rd Cir.1980). Accordingly, this portion of the award is amended to grant a civil penalty in favor of Sidney Perkins of $1,000 and in favor of Patsy Perkins for the same amount.
Aetna contends that the $2,500 attorney fee awarded by the district court is excessive and should be reduced to $750. It is hornbook law that a district judge has much discretion in fixing an attorney fee and his award will not be modified on appeal absent a showing of an abuse of that discretion. After considering all of the facts and circumstances of this case, we cannot say that the trial judge abused the much discretion accorded him by law. See, for example, Ingram v. Reliable Finance Company, Inc., 410 So.2d at 771 where the court awarded an attorney fee of $3,500 in a case somewhat factually similar to the instant case. This portion of the award is affirmed.

FAILURE TO REBATE INTEREST
Aetna contends that the district court committed error when it rendered judgment in favor of the Perkinses for $1,407.87, representing the loan finance charge on the large note. Neither Sidney Perkins nor Patsy Perkins testified about this issue. The only testimony in the record on this issue is that of Tom Greinstaff as follows:
Q Now, when this petition was filed, under this note, the total payoff of which was $4,032, you sued for $2,959.48. Why is that?
A Excuse me, could you ask that again?
Q The amount asked for in the suit on behalfon the note that you just identified was $2,959.48. Does this figure reflect the rebate of unearned interest?
A Yes, that's correct.
. . . . .
Q I think you testified that he was given a credit for unearned capitalized interest, is that correct?
A Yes.
Q And that appears in paragraph one of your petition. You state that the defendant owes you $3,998.06, interest is due on $2,959.48, is that correct?
A Okay, well, I haven't seen the petition, so I couldn't tell you that.

*127 Q Do you know how much unearned capitalized interest they were credited with?
A Yeah, according to my records, what was inwhen we took the charge, we rebated all the interest.
La.R.S. 9:3529 of the Louisiana Consumer Credit Law requires that if the maturity of a consumer credit transaction is accelerated for any reason and suit is filed the borrower shall be credited with the same rebate as if prepayment in full had been made on the date of filing suit. La.R.S. 9:3528 provides that upon prepayment the extender of credit must refund to the borrower the unearned loan finance charges pursuant to a formula set forth therein. The finance charge on the large note was $1,407.87 and, with the amount paid to the borrowers or on their behalf, resulted in a total amount due of $4,032. After rebate, the amount claimed on this obligation is $2,959.48, which is $335.35 more than the amount financed. The evidence presented by Aetna (although not detailed), which was subject to cross-examination, indicates that the rebated figure is correct. The Perkinses have presented no evidence to the contrary nor have they demonstrated in brief that these calculations are wrong. The judgment of the district court on this portion of the award is clearly wrong and is reversed. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Apparently, the district court rejected the claim of the Perkinses for rebated interest on the small note. The Perkinses have not contested this portion of the district court judgment by way of appeal or answer to the appeal.

RECOVERY ON CLAIMS BY AETNA
Aetna contends that the district court committed error by failing to grant judgment on its claim on the two promissory notes and for the overpayment.
The Perkinses have not cited in their pleadings or in brief any provision of the Truth in Lending Law or Regulations which would authorize the cancellation of their obligations under the facts of this case. We are unable to find any provision of the Truth in Lending Law or Regulations which would authorize the avoidance of these transactions for failure to properly disclose. Liberty Loan Corporation v. Stanley, 389 So.2d at 1359. (15 U.S.C.A. § 1635 provides for rescission of a consumer credit transaction in which a security interest is acquired on real property used as the residence of the person to whom the credit is extended.)
The Perkinses cannot utilize the provisions of La.R.S. 9:3552 to rescind their obligations because they did not utilize the procedure prescribed therein. Instead, they urge that the transactions should be rescinded because they are unconscionable, as that term is defined in La.R.S. 9:3551 of the Louisiana Consumer Credit Law, citing Community Acceptance Corporation of Denham Springs, Inc. v. Kinchen, 417 So.2d 22 (La.App. 1st Cir.1982) as authority. La.R.S. 9:3551 provides as follows:
With respect to a consumer credit transaction, if the court as a matter of law finds the agreement or any clause of the agreement to have been unconscionable at any time it was made the court may refuse to enforce the agreement, or it may enforce the remainder of the agreement without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result; provided, however, for the purposes of this chapter, an agreement, clause, charge or practice expressly permitted by this chapter or any other law or regulation of this state or of the United States or subdivision of either, or an agreement, clause, charge or practice necessarily implied as being permitted by this chapter or any other law or regulation of this state or the United States or any subdivision of either is not unconscionable.
The term "unconscionable" is defined in La.R.S. 9:3516(30) as follows:
`Unconscionable'. A contract or clause is unconscionable when at the time the contract is entered into it is so onerous, *128 oppressive or one-sided that a reasonable man would not have freely given his consent to the contract or clause thereof in question; ...
The Perkinses do not allege in their pleadings or in brief that the terms of their loans are in violation of law. The facts in the instant case are distinguishable from those in Community Acceptance Corporation of Denham Springs, Inc. v. Kinchen. In Kinchen, the trial court found as facts that the lender failed to rebate unearned interest, that the borrowers were unsophisticated and uneducated people of extremely limited means, that the borrowers' manager had knowledge that the vehicle being financed was disabled at the time of the transaction and that the discrepancy between the actual value of the vehicle and the size of the note was so great that it amounted to an exploitation of the borrowers "to such a degree that it borders on fraud". We have carefully reviewed all of the facts and circumstances in the instant case and do not find that the loan transactions were unconscionable. The judgment of the trial court rejecting Aetna's demands was clearly wrong and is reversed.
The testimony of Tom Greinstaff shows that the rebated balance due on the large note is $2,959.48 and that the payoff on the small note is $112.92. Aetna is entitled to judgments for these amounts. Aetna is also entitled to legal interest on each of these awards from date of judicial demand until paid.[4] La.C.C. art. 2924.
Aetna also claims that it is entitled to recover $1,038.58 from the Perkinses for an overpayment on the large loan. The credit application executed by the Perkinses on March 13, 1980, showed a balance due on an account with Aetna (number 36020-6) of $1,561.41. The rebated balance on this account was $1,038.58. When the loan transactions were executed, the Perkinses were given a check for $1,528.59 for the $1,038.58 payoff of the prior account and a balance of $490.01 payable to them. The prior account was never paid although the obligation was apparently cancelled. (If the note representing the prior account had not been cancelled, then it could have been sued upon in these proceedings.) The Perkinses admitted receiving and negotiating the check. Mrs. Perkins testified that she used the extra money to pay off her Master Charge and VISA accounts. Aetna has established by competent evidence its entitlement to recover this amount. Aetna did not pray for interest on this portion of the award and therefore no legal interest thereon shall be granted. La.C.C.P. art. 1921 and official revision comment (a) thereunder.
Aetna claims contractual attorney fees on the two notes of 25% of the principal and interest due. The large note contains the following provision for a contractual attorney fee:
Borrower(s) agree to pay a reasonable attorneys fee not to exceed 25% of the unpaid balance should this note be referred after default to an attorney not a salaried employee of the lender.
Since Aetna is claiming entitlement to this award, the burden is on it to show that it is entitled to it. There is no evidence in the record to show that the attorney who represented Aetna in these proceedings was not a salaried employee of Aetna. Thus, Aetna has failed to prove its entitlement to this portion of the claim. The small note contains the following provision for an attorney fee:
Buyer agrees to pay reasonable attorney fees not in excess of 25% of amount due at time referred to attorney.
The testimony of Tom Greinstaff indicates that the payoff on the small note at the time of default was $112.92. Aetna is entitled to an attorney fee of 25% of that amount. Aetna, by the terms of the provision, is not entitled to 25% of the legal interest which accrues on this portion of their claim.

*129 DECREE
For the foregoing reasons, the judgment of the trial court is amended to grant civil penalties of $1,000 each to Sidney Perkins and Patsy Perkins; the statutory penalty attorney fee award of $2,500 is affirmed; that portion of the judgment granting an award for an unrebated finance charge of $1,407.87 is reversed; judgment is granted in favor of Aetna and against Sidney and Patsy Perkins jointly, severally and in solido, in the sum of $2,959.48 with legal interest thereon from date of judicial demand until paid; judgment is granted in favor of Aetna and against Sidney Perkins in the sum of $112.92 with legal interest thereon from date of judicial demand until paid together with an attorney fee of 25% of $112.92; judgment is granted in favor of Aetna and against Sidney Perkins and Patsy Perkins jointly, severally and in solido, in the sum of $1,038.58; and judgment is rendered authorizing the parties, to the extent possible, to offset against each other the respective sums for which they have been cast on the main and reconventional demands (Baker Bank and Trust Company v. Matthews, 401 So.2d at 1252). All costs of this court and the trial court shall be paid one-half by Aetna and one-half by Sidney Perkins and Patsy Perkins. Liberty Loan Corporation v. Stanley, 389 So.2d at 1360.
AFFIRMED IN PART, AMENDED IN PART AND REVERSED IN PART.
NOTES
[1] The suit covering jacket indicates that the name of the plaintiff is Aetna Financial Company of Baton Rouge, but the pleadings, briefs and memoranda indicate the correct name is Aetna Finance Company of Baton Rouge.
[2] Attached to Aetna's petition is a copy of an unsigned chattel mortgage on the Perkinses household chattels dated March 14, 1980. However, the suit does not request recognition of this chattel mortgage and the original document was not filed in evidence.
[3] Williams and Robinson were not called as witnesses at the trial.
[4] Although both of the Aetna notes had acceleration clauses and Aetna would be entitled to legal interest from the date that the note obligations became due (La.C.C. art. 1938), it only requested legal interest from date of judicial demand. La. C.C.P. art. 1921.