THERIOT, J.
|2The Appellant, St. James Behavioral Health Hospital, Inc. (St. James), appeals the trial court’s award of attorney’s fees for an eviction proceeding as excessive and improper. The Appellee, Kushi Healthcare, LLC (Kushi) answered the appeal, challenging the trial court’s denial of damages allegedly caused to the property by St. James; the trial court’s denial of rental payments through the term of the lease; the trial court’s denial of late fees for each month of past due rental payments; and the trial court’s denial of attorney’s fees for its suit to recover for alleged damages to the property. Kushi also sought to recover the additional costs and attorney’s fees it had incurred on the appeal of this matter. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
In April of 2004, Kushi leased 7600 square feet of office space located at 923 Executive Park, Suites 9 through 14, Baton Rouge, Louisiana, from Executive Park Management, Inc. (Executive Park). In January of 2011, St. James subleased 7300 square feet of the Executive Park office space from Kushi (leased premises). Paragraph 2 of the Sublease provides that “[a]ll terms and conditions that are spelled out in the Prime lease ... will guide this sublease except the base term rent and the monthly rent, which is spelled out in this agreement.” The term of the Sublease was from January 1, 2011 through June 9, 2013, with a monthly base rent of $3,300.00. Pursuant to a Memorandum of *1195 Understanding, St. James was not required to pay for utilities, janitorial services, and maintenance services of the leased space.
The Sublease and the Memorandum of Understanding were signed on behalf of Kushi and St. James by Gopinath Gopa-lam, who was the sole member and manager of Kushi, and the CEO, CFO, board member, and a thirty-fíve per cent owner of St. James. Gopalam was the party responsible | ¡¡for paying St. James’ rent to Kushi. Gopalam was removed from his positions at St. James in September of 2011.
During the transition period following Gopalam’s removal, St. James failed to pay its October 2011 rent. On October 14, 2011, Kushi sent a certified letter to St. James indicating that rent was past due for October and demanded immediate payment in the amount of $3,300.00, along with late fees in the amount of $165.00. St. James mailed the October 2011 and November 2011 rent on November 3, 2011. Kushi refused to accept the late payment.
On November 30, 2011, Kushi delivered a Notice to Vacate to St. James via hand delivery. St. James attempted to pay the rent again on December 4, 2011, and Kushi again rejected payment. On December 6, 2011, Kushi filed a Rule to Evict St. James, seeking all past due rent and late fees from October 1, 2011 until evicted, along with all damages, costs, and attorney fees. Following a hearing, the trial court severed the claims for rent, damages, and attorney fees from the eviction proceeding and granted Kushi’s rule to evict. St. James filed a motion for suspensive appeal, which the trial court dismissed on Kushi’s motion, and this court reinstated.
St. James evacuated the leased premises on September 24, 2012. Thereafter, on September 26, 2012, when St. James’ sus-pensive appeal was called for oral argument before this court, counsel for St. James advised counsel for Kushi that St. James had vacated the premises, and announced that St. James desired to dismiss its appeal. St. James’ appeal was formally dismissed by order of this court dated October 24, 2012.
The parties thereafter filed a pre-trial order, wherein Kushi asserted that the December 19, 2011 judgment entitled it to rental payments and late fees from October 1, 2011, damages, costs, and attorney fees. Additionally, |4Kushi asserted that following St. James’s evacuation of the leased premises, it discovered that the premises had been damaged and sought the cost of repairing the damages to the leased property. In response, St. James argued that Kushi was not entitled to rental payments through the end of the lease term because Kushi had evicted St. James, and Kushi was not entitled to late feés because Kushi had refused to accept St. James’ attempts at paying rent after the October 14, 2011 letter; that St. James was not liable for the alleged damages to the leased premises, because the premises were returned in the same condition, excepting normal wear and tear; and that Kushi was not entitled to attorney’s fees pursuant to the terms of the Sublease.
Trial on Kushi’s entitlement to past due rent, damages, and attorney fees under the lease agreement was held on February 27, 2014. The trial court awarded a total of $43,065.00 in rent and late charges, which represented rent for the 13 months St. James remained on the premises after it first defaulted and late fees for the month of October 2011. The trial court declined to award Kushi damages for the cost of repairing the leased premises, finding that the condition of the property at the time of St. James’ evacuation was consistent with normal wear and tear; however, acknowledging that the premises did require ex *1196 tensive cleaning, the trial court awarded $4,000.00 in cleanup costs. With respect to Kushi’s request for attorney’s fees, the trial court severed those costs associated with the lease from those associated with the damages sought post-eviction, and awarded $40,144.18 in attorney’s fees and out-of-pocket expenses for those fees asso-dated with the lease.
St. James appealed, challenging the trial court’s award of $40,144.18 in attorney’s fees. St. James argues that the' amount was excessive under the circumstances of the case and improper under the specific provisions of the | ¡¡various lease agreements between the parties pursuant to which the payment of attorney’s fees was authorized. Kushi answered the appeal, raising four assignments of error: (1) the trial court erred in failing to award damages to Kushi for the damages caused to the leased premises by St. James; (2) the trial court erred in failing to award Kushi rentals for the period from October of 2011 through the end of the lease term on June 9, 2013; (3) the trial court erred in failing to award Kushi late fees for each month that rental payments were due; and (4) the trial court erred in failing to award Kushi the full measure of the attorney’s fees and costs it incurred.
DISCUSSION

Appellee’s Assignment of Error No. 1

Kushi argues that the trial court erred by failing to award it $45,000.00 for the damages Kushi alleges were caused to the premises by St. James.
The lease documents at issue did not specify the condition in which the leased premises were to be returned. When parties make no provision for a particular situation, it is assumed that they intended to bind themselves not only to the express provisions of the contract but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose. La. C.C. art. 2054. Thus, the trial court properly applied the general rule regarding a lessee’s obligation to make repairs set forth in La. C.C. art. 2692, which provides:
The lessee is bound to repair damage to the thing caused by his fault or that of persons who, with his consent, are on the premises or use the thing, and to repair any deterioration resulting from his or their use to the extent it exceeds the normal or agreed use of the thing.
| ^Further, comment c to La. C.C. art. 2692 explicitly states that the lessee is not responsible for repairing the deterioration that is caused by normal wear and tear of the thing.
Having viewed photographs and videos of the condition of the leased premises at the time of St. James’ evacuation, the trial court determined that such conditions as worn carpets and scratched walls and doors were attributable to the normal use of an office over a thirteen month period.[1] Further, the trial court found that such maintenance, fell within the scope of the services Kushi was responsible for pursuant to the Memorandum of Understanding, which specifically provided that St. James was not required to pay for utilities, janito *1197 rial services, and maintenance services of the leased space. Thus, the trial court did not award Kushi damages for Gopalam’s work in repairing the leased premises; however, acknowledging that the premises did require extensive cleanup, the trial court did award $4,000.00 for the cost of cleaning.
A court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Under the manifest error standard, in order to reverse a trial court’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993); Southland Indus. Park v. Matheson Tri-Gas, Inc., 2006-2212 (La.App.1 Cir. 9/19/07), 963 So.2d 1106 (unpublished).
After a thorough review of the record, including all photographs and videos of the leased premises submitted by both parties, we find that there is a reasonable factual basis for the trial court’s damage award, and that the award is not clearly wrong when viewed in light of the record. As stated by the trial court, the alleged damage to the leased premises was all “normal wear and tear,” and although the cleanup required was in excess of what is expected in the normal course of business, the trial court properly awarded cleanup costs to account for such. Accordingly, we find no manifest error in the trial court’s decision to decline to award damages for the alleged damages to the premises. Thus, we find this assignment of error to be without merit.

Appellee’s Assignment of Error No. 2

Kushi argues that the trial court erred by awarding damages for lost rentals for the thirteen month period from St. James’ default in October 2011 through October 2012 and maintains that the trial court should have awarded damages for lost rentals from St. James’ default in October 2011 through the end of the lease term on June 9, 2013.
Generally, when a lessee defaults on a lease agreement, the lessor has two options available: he may sue to' cancel the lease and to recover accrued rentals due, or he may sue to enforce the lease and to recover both accrued rentals and 'future accelerated rentals if the lease contains an acceleration clause. Richard v. Broussard, 495 So.2d 1291, 1293 (La.1986); Lobell v. Rosenberg, 2014-0060 (La.App. 4 Cir. 1/7/15), 158 So.3d 874, 883-84; Southpark Cmty. Hosp., LLC v. Southpark Acquisition Co., LLC, 2013-59 (La.App. 3 Cir. 10/30/13), 126 So.3d 805, 815, writ denied, 2013-2794 (La 2/28/14), 134 So.3d 1175; Ken Lawler Builders, Inc. v. Delaney, 36,263 (La.App. 2 Cir. 8/14/02), 837 So.2d 1, 7; 1001 Harimaw Court E., L.L.C. v. Bio, Inc., 10-860 (La.App. 5 Cir. 5/24/11), 66 So.3d 1131, 1133, These reme dies are mutually exclusive. Richard, 495 So.2d at 1293. If the lessor elects- to cancel the lease, the lease is terminated and the lessor is entitled to return into possession, but he forfeits the right to all future rentals. Id. Oh the other hand, if the lessor elects to enforce the lease, he may obtain a money judgment against the lessee based on the terms of the lease agreement, but the lease remains’’ in effect and the lessee retains the right of occupancy for -the remainder of the term of the lease. Id. Not only are the remedies set forth in Richard mutually exclusive,- but any attempt by a lease document to circumvent established law'is unenforceable. Lobell, *1198 158 So.3d at 883-84; Soutkpark, 126 So.3d at 815.
Once Kushi terminated the lease and evicted St. James, it forfeited the right to any future rentals. The trial court did not err in refusing to award damages in the form of rentals through the end of the lease term. Thus, we find this assignment of error to be without merit.

Appellee’s Assignment of Error No. 3

Kushi argues that the trial court erred in failing to award Kushi late fees for each month that rental payments were due. On this issue, the trial court stated:
With regard to late fees, in October [St. James] attempted to pay and were not allowed to pay. Any late fees past that date are deemed to have been waived because the plaintiff would not accept the payments. It would be a vain and useless act to continue to try and keep paying, when [Kushi] wouldn’t receive the payments; therefore, there should be no late fee after that. However, for the month of September, there should be a late fee.
[flIt is well settled in Louisiana law that the summary action of eviction is based on a required notice to vacate, and that acceptance of rent after that notice (but before the judgment of eviction) vitiates the notice and prevents a lessor from obtaining such judgment. La. C.C.P. arts. 4701, 4702, and 4731; Billiot v. Hue, 2010-1825 (La.App.1 Cir. 5/6/11), 2011 WL 1944120 (unpublished); Bowling U.S.A., Inc. v. Genco, 536 So.2d 814, 815 (La.App. 1 Cir.1988). Although a lessor may have a right to rental payments for the occupancy during the time the tenant stays against the landlord’s wishes, acceptance of rent is deemed to negate the notice to vacate required for summary eviction. Genco, 536 So.2d at 816. The notice to vacate is an essential part of the summary eviction procedure provided for in La. C.C.P. art. 4701. Without this notice, there can be no judgment issued under La. C.C.P. art. 4701. Id.
Citing these jurisprudential rules, Kushi argues that accepting rent from St. James after October of 2011 would have vitiated the notice to vacate and reinstated the Sublease, and that Kushi is entitled to late fees pursuant to the Sublease for each month this court finds- rent is due. However, this argument disregards the time-line of this matter. Kushi demanded immediate payment of the October rent and a late fee by certified mail on October 14, 2011, and then refused to accept the payment St. James mailed on November 3, 2011. Kushi did not deliver notice to vacate until November 30, 2011. Kushi’s reliance on the rules of the eviction proceeding prior to invoking such rules by delivering a notice to vacate is inappropriate, as it is impossible that accepting the rental payments could negate a notice to vacate that was not yet in existence. As such, the trial court did not err in refusing to award late fees for each month that rental payments were due under these circumstances. We find this assignment of error to be without merit.
I ^Appellee’s Assignment of Error No. 4
Kushi argues that the trial court erred in failing to award Kushi the full measure of the attorney’s fees and costs it incurred.
It is well recognized that as a general rule attorney’s fees are not allowed except where authorized by statute or contract. Hernandez v. Harson, 237 La. 389, 408, 111 So.2d 320, 327 (1958); Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756, 763 (La.1985). Moreover, attorney’s fee statutes are construed strictly because an award of attorney’s fees is exceptional and penal in nature. Silliman Private Sch. Corp. v. *1199 S’holder Grp., 2001-0964 (La.App.1 Cir. 5/10/02), 819 So.2d 1088, 1092, writ denied, 2002-1501 (La.9/20/02), 825 So.2d 1176; Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc., 449 So.2d 1014, 1015-16 (La.1984). A district judge has much discretion in fixing an attorney fee and his award will not be modified on appeal absent a showing of an abuse of that discretion. Aetna Fin. Co. of Baton Rouge v. Perkins, 448 So.2d 121, 126 (La.App.1 Cir. 2/28/84); Crawford v. Blue Cross Blue Shield of Louisiana, 1999-2503 (La.App.1 Cir. 11/3/00), 770 So.2d 507, 518, writ denied, 2000-3267 (La.2/16/01), 786 So.2d 98.
Paragraph 17 of the Prime Lease provides that “[i]n the event Landlord has to retain an attorney to enforce any of the provisions of this Lease, Tenant shall be liable for those reasonable attorney fees incurred by Landlord.” Paragraph 15 of the Prime Lease provides in pertinent part that “[sjhould Tenant fail to make any payment of monthly rent, or any other payment required to be made hereunder promptly when due without notice ... Landlord shall be entitled to consider this Lease in default and thereupon may ... Terminate this Lease, evict the Tenant from the premises and recover from the Tenant all expenses and damages allowed by law ... ”. |n Thus, the trial court’s award of attorney’s fees for the eviction proceeding was authorized by the Sublease’s incorporation of the terms and conditions of the Prime Lease.
However, as discussed above regarding Kushi’s allegation that the trial court erred in failing to award damages for the condition the property was in at the time St. James vacated the leased premises, there is no provision in the Prime Lease or the Sublease regarding damages, repairs, or the condition in which the leased premises should be returned. As the Prime Lease only provides for attorney’s fees when enforcing provisions of the lease, and no provisions in the lease address damages to the leased premises, the Prime Lease does not authorize attorney’s fees for such an action. Thus, the trial court did not abuse its great discretion in declining to award Kushi the full measure of attorney’s fees incurred during the course of this litigation. We find this assignment of error to be without merit.'
Finding no merit to the arguments set forth by Kushi in its answer to appeal, we decline to award Kushi additional costs and attorney’s fees. See Louisiana Safety Ass’n of Timbermen v. Carlton, 2012-0775 (La.App. 1 Cir. 12/21/12), 111 So.3d 1076, 1086.

Appellant’s Assignment of Error

St. James argues that the trial court erred in granting attorney’s fees to Kushi in the amount of $40,144.18, as that amount was excessive under the circumstances of the case and improper under the specific provisions of the various lease agreements between the parties pursuant to which the payment of attorney’s fees was authorized.
Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of 11?money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court’s own knowledge. State, Dep’t of Transp. & Dev. v. Williamson, 597 So.2d 439, 442 (La.1992). A district judge has much discretion in fixing an attorney fee and his award will not be modified on appeal absent a showing of an abuse of that discretion. Aetna, 448 So.2d at 126.
*1200 During the course of this litigation, Ku-shi retained two law firms and four attorneys. Though the amount of attorney’s fees incurred during the eviction proceeding appears high, our review of the record indicates that the amount was supported by Kushi’s attorneys’ affidavits. Further, the trial transcript indicates that the trial court very carefully and thoroughly considered the issue of attorney’s fees incurred by Kushi during the eviction proceeding and awarded attorney’s fees associated with the contract itself and not with damages Kushi was seeking post-eviction. The trial court found the fees to be reasonable in light of the extent of the litigation, and we find that the trial court did not abuse its great discretion in its award of attorney’s fees. We find this assignment of error to be without merit.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is hereby affirmed. St. James Behavioral Health Hospital, Inc.’s challenge of the trial court’s award of attorney’s fees is denied. Kushi Healthcare, LLC challenges to the trial court’s denial of damages allegedly caused to the property by St. James; the trial court’s denial of rental payments through the term of the lease; the trial court’s denial of late fees for each month of past due rental payments; and the trial court’s denial of attorney’s fees for the lawsuit to | ^recover for alleged damages to the property are denied. Each party is to bear its own costs of this appeal.
AFFIRMED.
GUIDRY, J., concurs.

. The trial court stated in part:
What I saw, aside from trash that needed to be cleaned up and maybe some cleaning of carpet and floors, clearly falls within the normal use of the thing. This is an office. There’s going to be chair rubs on walls. There’s going to be wear on carpet. There’s going to be things that are of normal wear and tear to an office that’s been used for a thirteen-month period ... I saw no major broken walls, doors, windows, nothing that should have been corrected at the time it occurred. It was all normal wear and tear.