**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2024 CA 0682

FAMILY MANOR

VERSUS

DAZIAH STAPLETON

JUDGMENT RENDERED: _____**DEC 3 0 2024**_____

* * * * * * *

Appealed from the City Court of Baton Rouge
Parish of East Baton Rouge • State of Louisiana
Docket No. 24-00556-D

The Honorable Darrell White, Presiding Judge, Ad hoc

* * * * * * *

Daiziah Stapleton
Clinton, LA

APPELLANT
DEFENDANT—In proper person

Bailey Richard
Baton Rouge, LA

AGENT FOR APPELLEE
PLAINTIFF—Family Manor

* * * * * * *

BEFORE: McCLENDON, WELCH, AND LANIER, JJ.

**LANIER, J.**

This appeal arises out of a summary eviction proceeding brought by Plaintiff, Family Manor, against Defendant, Daiziah Stapleton.[1] The trial court granted the eviction. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On January 30, 2024, Family Manor, an apartment complex in East Baton Rouge Parish, filed a rule to evict Defendant, Daiziah Stapleton, in the City Court of Baton Rouge. Bailey Richard, the manager of Family Manor, alleged that the term of the lease of the premises to Ms. Stapleton expired and that Ms. Stapleton failed to pay the agreed-upon rent, resulting in a balance of $2,294.95 due to Family Manor. Ms. Richard also attested that notice to vacate was delivered to Ms. Stapleton on January 18, 2024.[2] Ms. Stapleton was served with notice of eviction proceedings on January 31, 2024, through the posting of a certified copy of the citation, notice, and/or pleading on the door of the premises.

The city court held a hearing on Family Manor's rule to evict on February 22, 2024, at which Ms. Richard and Ms. Stapleton were both present. At the hearing, Ms. Richard stated that Ms. Stapleton's lease had expired and that she had an outstanding balance of $2,294.00, which prompted her to file the rule to evict on behalf of Family Manor. Ms. Richard explained that she began managing the property in early January of 2024, and that with regard to "all the stuff that happened before then, [she was] cleaning it up." Though Ms. Richard alleged the lease agreement between Family Manor and Ms. Stapleton expired, Ms. Stapleton asserted

---

[1] The rule to evict misspelled Defendant's name as "Daziah." Defendant's motion for appeal reflects the correct spelling.

[2] It is unclear whether the notice to vacate was hand-delivered to Ms. Stapleton or posted on the door of the premises, as these two separate allegations are made in the rule to evict and the affidavit in support thereof.

that she renewed her lease on October 31, 2023. The city court ordered the parties to return the next day, on February 23, 2024, with a copy of the lease renewal.

The parties returned the next day as instructed. The following evidence was presented to the court at the February 23, 2024 hearing: (1) emails between Ms. Stapleton and Family Manor management regarding renewal of her lease and the eviction proceedings; (2) a ledger of Ms. Stapleton's account with Family Manor, displaying charges, fees, and all payments tendered post-move in; (3) the December 28, 2023 "3-Day Notice" from Family Manor to Ms. Stapleton demanding payment of accrued past-due rent and late charges from November of 2023 and December of 2023, or alternatively, that she vacate the premises[3]; (4) undated text messages between Ms. Richard and Ms. Stapleton regarding a November 2023 money order and photographs thereof; (5) various signed documents related to the leased premises; (6) screenshots from Ms. Stapleton's bank account that purport to show payments made to Family Manor; and (7) screenshots from Ms. Stapleton's resident payment portal.

Additionally, Ms. Stapleton admitted that she had a remaining balance of $250.00 for the month of January and that she had not yet paid that amount because Ms. Richard allegedly told her multiple times that her account would be credited for uncashed money orders, that she would remove any late charges from Ms. Stapleton's account, that Family Manor owes Ms. Stapleton $2,000.00, and that Ms. Richard would not accept partial payments. Ms. Stapleton also argued that she should not be subject to eviction for nonpayment of February 2024 rent because the rule to evict was filed on January 30, 2024, which was before her February 2024 payment became delinquent. Finally, Ms. Stapleton asserted that Ms. Richard, on behalf of Family Manor, presented "a lot of falsified documents," namely, the ledger,

---

[3] This is a document separate from the La. Code Civ. P. art. 4702 notice to vacate, which was attached to Family Manor's rule to evict.

3

which, according to Ms. Stapleton, reflected "a bunch of charges being moved around." Ms. Stapleton argued that the amounts paid according to Family Manor's ledger and the amounts she actually paid to Family Manor were incongruent, and she suggested that was evidence of fraudulent activity allowing Family Manor "to get the amount of rent and money that they want[ed]."

In response, Ms. Richard informed the court that when she took over management of Family Manor in early January of 2024, she could not locate any leases, including Ms. Stapleton's. Ms. Richard stated that her "corporate team" told her to renew all leases so that all lessees would have a lease on file. Ms. Richard also introduced emails acknowledging Ms. Stapleton's "pending" rent payments for January of 2024 and February of 2024. Ms. Richard's email further stated:

> Your total balance as of . . . February 7[th] [of 2024] is $1,300. That balance does not include your late fees of $300 that you started accumulating on December 6[th] of 2023. Due to rent not being paid until December the 11[th], we can work something out with your late fees but we must have the balance of [$1,300] paid by the 15[th] of February. If payment is not made by that date, we will have to move forward with the eviction.

Ms. Richard also attested that all late fees were removed from Ms. Stapleton's account and that Ms. Stapleton's current balance was just over $2,000.00.

The city court granted a judgment of eviction and signed same on February 23, 2024, in favor of Family Manor and against Ms. Stapleton at the conclusion of the hearing. The judgment included a notation that the judgment was "not executory before [March 1, 2024]." Defendant appealed.

## LAW AND DISCUSSION

On appeal, Ms. Stapleton asserts the city court erred when it signed a judgment of eviction in favor of Family Manor because she offered evidence that she did not violate the lease terms. Ms. Stapleton further asserts that Ms. Richard "provid[ed] misleading information and documentation of charges to [Ms.] Stapleton and the court on multiple accounts[]" and that "all [evidence] presented

4

by [Ms.] Stapleton [verified] that [she] in fact did not miss any payments according to the lease agreement and that the lease agreement was up to date and signed in full knowledge by [Ms.] Richard and [F]amily Manor[.]" Accordingly, Ms. Stapleton concludes she "did not violate the leasing agreement and the grounds for which the eviction [was] granted [were] erroneous on multiple accounts."

Eviction by summary proceeding is appropriate after two elements are proven by the plaintiff: (1) the defendant's status as an occupant; and (2) the cessation of the purpose of the occupancy. **71070 Hwy 21, LLC v. Cardiovascular Specialty Care Center of Covington, LLC,** 2023-0641 (La. App. 1st Cir. 12/27/23), 383 So.3d 205, 212. In this case, it is undisputed that Ms. Stapleton occupied the premises from which Family Manor sought to evict her. Therefore, the only question remaining is whether the purpose of the occupancy ceased. In its rule to evict, Family Manor cited two ways the purpose of the occupancy ceased: (1) the termination of the lease by expiration of its term; and (2) nonpayment of rent. See La. Code Civ. P. art. 4701.

We find Family Manor failed to establish that its lease with Ms. Stapleton terminated by expiration of its term. Family Manor's representative, Ms. Richard, admitted to the city court that she was unable to locate Ms. Stapleton's lease when she became manager. Ms. Richard also stated that her "corporate team" told her to renew all leases so that all lessees would have a lease on file. We therefore find no grounds for eviction based on expiration of the lease.

The only other ground for eviction presented by Family Manor was Ms. Stapleton's alleged nonpayment of rent. Family Manor filed its rule to evict on January 30, 2024. At the hearing on the rule to evict, Family Manor introduced emails to Ms. Stapleton wherein Ms. Richard explained that Family Manor sought to evict Ms. Stapleton for "January's past due balance along with February[']s now that it is after the sixth." Family Manor also introduced Ms. Stapleton's transaction

5

history, which showed a rent charge of $650.00 for both January of 2024 and February of 2024. The only payment made by Ms. Stapleton after January 1, 2024, was in the amount of $200.00. Ms. Stapleton represented to the court that she made this $200.00 payment in January of 2024, but Ms. Richard held it and did not deposit it until February 2, 2024.[4] According to Ms. Stapleton, upon receipt of the $200.00 payment, Ms. Richard told her, "[L]et me get your account straight before I accept [any more] money orders from you[.]" Therefore, Ms. Stapleton did not make any additional payments.

While Ms. Stapleton is correct that she may not be evicted for nonpayment of February 2024 rent since the rule to evict was filed before that rent became delinquent, she can still be evicted for nonpayment of January 2024 rent. Ms. Stapleton admitted to the court that she had not paid the full amount of January 2024 rent. Ms. Stapleton presented several arguments as to why she did not pay—Ms. Richard allegedly told her multiple times that her account would be credited for uncashed money orders, that she would remove any late charges from Ms. Stapleton's account, that Family Manor owes Ms. Stapleton $2,000.00, and that Ms. Richard would not accept partial payments; however, the city court clearly rejected these arguments in rendering a judgment of eviction on behalf of Family Manor.

A court of appeal may not set aside the city court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." See **Way-Jo, L.L.C. v. Anthony**, 2020-0361 (La. App. 1st Cir. 12/30/20), 319 So.3d 341, 348, writ not considered, 2021-00396 (La. 5/11/21), 315 So.3d 869. The supreme court has announced a two-part test for the reversal of a factfinder's determinations: (1) the

---

[4] The record is silent as to what date this payment was paid by Ms. Stapleton and received by Family Manor. Therefore, we cannot determine whether this payment vitiated notice to vacate. See **Kushi Healthcare, L.L.C. v. St. James Behavioral Health Hosp., Inc.**, 2015-0007 (La. App. 1st Cir. 6/5/15), 174 So.3d 1192, 1198 ("It is well settled in Louisiana law that the summary action of eviction is based on a required notice to vacate, and that acceptance of rent after that notice (but before the judgment of eviction) vitiates the notice and prevents a lessor from obtaining such judgment.").

appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). **Id.**, <u>citing</u> **Stobart v. State through Department of Transportation and Development**, 617 So.2d 880, 882 (La. 1993). If a reasonable factual basis exists, an appellate court may set aside a city court's factual finding only if, after reviewing the record in its entirety, it determines the city court's finding was clearly wrong. **State in Interest of A.S.**, 2019-0248 (La. App. 1st Cir. 9/4/19), 285 So.3d 1129, 1140. Moreover, where factual findings are based on determinations regarding the credibility of witnesses, the trier-of-fact's findings demand great deference and are virtually never manifestly erroneous or clearly wrong. **Id.**

Ms. Richard assured the city court that Ms. Stapleton's account would be credited for any uncashed money orders upon proof of their existence, which she had not yet received.[5] Ms. Richard also informed the court that she removed all late charges from Ms. Stapleton's account, except for any late charges accrued for nonpayment of January 2024 rent. As to Ms. Stapleton's assertion that Family Manor owes her $2,000.00, Ms. Richard stated, "I have no idea where that's coming from." The written correspondence between the parties also does not reflect that Family Manor owes Ms. Stapleton any money beyond crediting her account upon proof of uncashed money orders. Ms. Richard did not directly respond to Ms. Stapleton's assertion that she would not accept partial payments.

---

[5] The uncashed money order mentioned at the hearing was one Ms. Stapleton allegedly remitted to Family Manor in November of 2023. Ms. Richard instructed Ms. Stapleton to "track the money order that [she] delivered in November of 2023 to see if it was cashed." Ms. Richard told Ms. Stapleton that once that was complete, Family Manor would credit her for the amount missing for November of 2023. Ms. Richard informed the court that, to date, Ms. Stapleton had not updated her regarding the November 2023 money order. Regardless, by Ms. Richard's own admission, the eviction proceedings before us related to nonpayment of January 2024 and February 2024 rent, not November 2023 rent.

We find a reasonable factual basis exists in the record supporting the city court's ruling. Therefore, this court may only set aside the city court's finding if it determines it was clearly wrong after reviewing the record in its entirety. See **State in Interest of A.S.**, 285 So.3d at 1140. Ms. Stapleton introduced several screenshots from her bank account and her resident payment portal in an attempt to show that she made timely rent payments. However, Ms. Stapleton's bank account transactions show the payee as "Wal-Mart." There is nothing in the record to confirm that Ms. Stapleton paid her January 2024 rent in full. In fact, Ms. Stapleton admitted to having an outstanding balance for January 2024 rent.

Given the record before us, we cannot say the city court's factual findings were manifestly erroneous or clearly wrong. As such, we find no error in the city court's judgment granting the rule to evict Ms. Stapleton filed by Family Manor.

## CONCLUSION

Based on the foregoing, the February 23, 2024 judgment granting the rule to evict in favor of Family Manor and against Daiziah Stapleton is affirmed. All costs of this appeal are assessed to Daiziah Stapleton.

**AFFIRMED.**